# 22-2066

## United States Court of Appeals

*for the*

## Second Circuit

PICKET FENCE PREVIEW, INC.,

*Plaintiff-Appellant,*

— v. —

ZILLOW, INC.,

*Defendant-Appellee,*

## BRIEF OF DEFENDANT-APPELLEE

HEATHER P. LAMBERG
LAUREN GAILEY
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, DC 20036

*Attorneys for Defendant-Appellee Zillow, Inc.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee Zillow, Inc. states that Zillow, Inc. is a Washington corporation and is a wholly owned subsidiary of Zillow Group, Inc., a publicly held corporation. No other publicly held corporation owns 10% or more of its stock. Zillow, Inc. has no subsidiaries and no affiliates that have issued shares of ownership to the public.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................... 1

COUNTER-STATEMENT OF THE ISSUES ............................ 4

STATEMENT OF THE CASE ................................................... 4

    A.    Picket Fence alleges that Zillow's free FSBO ads—undisputedly offered at no cost—were not truly "free" ....................................................... 5

    B.    The district court recognizes that Zillow never promised "a commission free sale" ................................. 7

    C.    Picket Fence's amended complaint claims Zillow's FSBO ads were not really FSBO ads ........................... 10

    D.    Picket Fence triples down on VCPA consumer standing ..................................................................... 12

SUMMARY OF THE ARGUMENT ...................................... 13

STANDARD OF REVIEW ..................................................... 18

ARGUMENT ........................................................................... 18

    I.    The district court rightly dismissed Picket Fence's VCPA deceptive-acts and predatory pricing claims ............. 19

    A.    Vermont law is clear that only a "consumer" can bring a deceptive-acts claim ....................................... 20

        1.    The district court's reading of the VCPA was correct .......................................................... 21

        2.    Vermont case law confirms the district court's reading ................................................... 30

B.  Even if there had been standing, Picket Fence's
    deceptive-acts claim would have failed on the
    merits ..................................................................... 35

    1.  Zillow's FSBO listings, which make no
        promises as to whether a buyer will be
        represented, are not misleading ......................... 36

    2.  Picket Fence's interpretation of FSBO is
        unreasonable ...................................................... 41

    3.  The alleged misinterpretation is not
        material .............................................................. 43

C.  Picket Fence's predatory pricing allegation is
    deficient ................................................................... 45

II. The district court rightly dismissed the Lanham Act
    claim, as Picket Fence alleged nothing false about
    Zillow's FSBO listings ............................................... 49

CONCLUSION ...................................................................... 57

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allianz Ins. Co. v. Lerner,*
    416 F.3d 109 (2d Cir. 2005) .............................................................. 31

*Apotex Inc. v. Acorda Therapeutics, Inc.,*
    823 F.3d 51 (2d Cir. 2016) .................................................................. 38

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................. 18

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.,*
    509 U.S. 209 (1993) ........................................................ 16, 45, 46, 49

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977) ............................................................................. 48

*Cargill, Inc. v. Monfort of Colo.,*
    479 U.S. 104 (1986) ...................................................................... 29, 47

*Carter v. Gugliuzzi,*
    716 A.2d 17 (Vt. 1998) .............................................................. *passim*

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH,*
    843 F.3d 48 (2d Cir. 2016) ................................................ 50, 52, 55, 56

*City of Johnstown v. Bankers Standard Ins. Co.,*
    877 F.2d 1146 (2d Cir. 1989) ............................................................. 34

*Conopco, Inc. v. Campbell Soup Co.,*
    95 F.3d 187 (2d Cir. 1996) .................................................................. 54

*Daiello v. Town of Vernon,*
    282 A.3d 894 (Vt. 2022) .............................................. 21, 22, 26, 28

*Dane v. UnitedHealthcare Ins. Co.,*
    974 F.3d 183 (2d Cir. 2020) ............................................................ 18

*Del Webb Cmtys., Inc. v. Partington,*
    652 F.3d 1145 (9th Cir. 2011) ......................................................... 32

*Duncan v. Nw. Airlines, Inc.,*
    203 F.R.D. 601 (W.D. Wash. 2001) ............................................... 34

*Ebomwonyi v. Sea Shipping Line,*
    2022 WL 274507 (2d Cir.) ............................................................... 51

*Ehlers v. Ben & Jerry's Homemade Inc.,*
    2020 WL 2218858 (D. Vt.) .............................................................. 42

*Elkins v. Microsoft Corp.,*
    817 A.2d 9 (Vt. 2002) .............................................. 25, 27, 28, 29

*Franklin Cnty. Sheriff's Office v. St. Albans City
    Police Dep't,*
    58 A.3d 207 (Vt. 2012) ......................................... 28, 45, 47

*Estate of Daniels v. Goss,*
    274 A.3d 832 (Vt. 2022) ........................................... 21, 24

*Estate of Frant v. Haystack Grp., Inc.,*
    641 A.2d 765 (Vt. 1994) ................................................................. 22

*Gallop v. Cheney,*
    642 F.3d 364 (2d Cir. 2011) ........................................................... 48

*Gramatan Home Invs. Corp. v. Starling,*
    470 A.2d 1157 (Vt. 1983) ............................................................... 27

*Gray v. Treder,*
    204 A.3d 1117 (Vt. 2018) ............................................................... 29

*H.D. Oliver Funeral Apts., Inc. v. Dignity Funeral Servs.,
    Inc.,*
    964 F. Supp. 1033 (E.D. Va. 1997) ............................................... 33

*Int'l Code Council Inc., v. UpCodes Inc.*,
43 F.4th 46 (2d Cir. 2022) ........................................................ 54, 56

*Jenkins v. Gen. Collection Co.*,
538 F. Supp. 2d 1165 (D. Neb. 2008) ................................................ 32

*Jordan v. Nissan N. Am., Inc.*,
853 A.2d 40 (Vt. 2004) ......................................................... 35, 36

*Jusino v. Fed'n of Cath. Tchrs., Inc.*,
54 F.4th 95 (2d Cir. 2022) ......................................................... 35

*Klump v. Nazareth Area Sch. Dist.*,
425 F. Supp. 2d 622 (E.D. Pa. 2006) ................................................ 34

*Lamie v. U.S. Trustee*,
540 U.S. 526 (2004) ................................................................. 23

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ................................................................. 50

*In re M.C.*,
204 A.3d 1123 (Vt. 2018) ........................................................... 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ................................................................. 49

*Merck Eprova AG v. Gnosis S.p.A.*,
760 F.3d 247 (2d Cir. 2014) ..................................................... 55, 56

*Messier v. Bushman*,
197 A.3d 882 (Vt. 2018) ........................................................ 23, 30

*Michalski v. Home Depot, Inc.*,
225 F.3d 113 (2d Cir. 2000) ........................................................ 34

*Moffitt v. Icynene, Inc.*,
407 F. Supp. 2d 591 (D. Vt. 2005) .................................................. 40

*Morenz v. Wilson-Coker*,
415 F.3d 230 (2d Cir. 2005) ........................................................ 21

*Nielsen v. Rabin*,
　746 F.3d 58 (2d Cir. 2014) .................................................. 18

*In re Nortel Networks Corp. Sec. Litig.*,
　539 F.3d 129 (2d Cir. 2008) ............................................... 31

*Ne. Farm Sales & Service, Inc. v. Krone NA, Inc.*,
　2018 WL 11469704 (D. Vt.) ................................................ 31

*Panag v. Farmers Ins. Co. of Wash.*,
　204 P.3d 885 (Wash. 2009) ................................................ 33

*Peabody v. P.J.'s Auto Vill., Inc.*,
　569 A.2d 460 (Vt. 1989) ....................................... 40, 41, 43

*Pink v. A.A.A. Highway Express, Inc.*,
　314 U.S. 201 (1941) .......................................................... 33

*Poulin v. Ford Motor Co.*,
　513 A.2d 1168 (Vt. 1986) ................................................... 41

*Rathe Salvage, Inc. v. R. Brown & Sons, Inc.*,
　46 A.3d 891 (Vt. 2012) ......................................... 8, 23, 30

*REX – Real Estate Exchange Inc. v. Zillow*,
　2021 WL 3930694 (W.D. Wash.)................................... 53, 54

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
　241 F.3d 232 (2d Cir. 2001) ............................................... 50

*Toensing v. Att'y Gen. of Vermont*,
　212 A.3d 180 (Vt. 2019) ..................................................... 29

*United States v. Peterson*,
　394 F.3d 98 (2d Cir. 2005) ................................................. 29

*Vess v. Ciba-Geigy Corp. USA*,
　317 F.3d 1097 (9th Cir. 2003)............................................. 54

**Statutes**

9 V.S.A. § 2451 ........................................................ 26, 28

9 V.S.A. § 2451(a) .......................................................... 22

9 V.S.A. § 2453(a) ...................................................... *passim*

9 V.S.A. § 2461 .............................................. 8, 20, 22, 31

9 V.S.A. § 2461(b) ..................................................... *passim*

9 V.S.A. § 2461c ....................................................... 21, 25

9 V.S.A. § 2461c(a) ................................................... 25, 45

9 V.S.A. § 2461c(e) ........................................................ 27

9 V.S.A. § 2465 ......................................................... *passim*

9 V.S.A. § 2465(a) ......................................................... 25

Lanham Act, 15 U.S.C. §§ 1051–1141n ....................... *passim*

N.Y. Gen. Bus. Law § 349(a) ........................................ 32

N.Y. Gen. Bus. Law § 349(h) ........................................ 32

Neb. Rev. Stat. §§ 59-1602–06 ..................................... 32

Neb. Rev. Stat. § 59-1609 ........................................... 32

Vermont Consumer Protection Act, 9 V.S.A. §§ 2451–2483b ......... *passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) .................................................. 53, 54

Fed. R. Civ. P. 12(b)(6) ................................................ 18

*How To Sell Your House For Sale By Owner*, Zillow.com .............. 4, 36

*Zillow*, Zillow.com .................................................... 4

# PRELIMINARY STATEMENT

Picket Fence, a Vermont real estate service specializing in "for sale by owner" (FSBO, pronounced "fizzbo") properties in the region, charges FSBO sellers a fee to list their properties on its website. Zillow also offers FSBO listings—but Zillow's are free.

Picket Fence claims to have lost business to Zillow in recent years, not because Picket Fence costs more than Zillow, or that customers prefer Zillow's interface, or that Zillow is a market leader with a national reach—to name a few of many benign reasons. In Picket Fence's view, it is losing business because Zillow directs potential buyers from its free FSBO listings toward real estate agents who advertise on its site, with the effect that a FSBO seller who preferred to sell their home without hiring their own agent might have to pay a commission to a *buyer's* agent.

Picket Fence claims this is unlawful, and has alleged "deceptive acts" and predatory pricing in violation of the Vermont Consumer Protection Act (VCPA), 9 V.S.A. §§ 2451–2483b, and false advertising under the federal Lanham Act, 15 U.S.C. §§ 1051–1141n. None of these claims has merit.

The Vermont Supreme Court has made clear on several occasions that only *consumers* can bring deception claims under the VCPA—and no case law supports Picket Fence's contrary theory of consumer standing.

Picket Fence's novel and unfounded approach to standing under the VCPA should be ignored by this Court. Rather, the VCPA deception claim *and* the Lanham Act claim at issue necessarily fail because Picket Fence cannot allege anything false or misleading about Zillow's FSBO listings. As the district court recognized, Zillow merely allows FSBO sellers to list their properties on its site for free—"a preliminary step in a real estate transaction." JA56. Zillow makes "no guarantee" about subsequent steps in the transaction, such as whether a buyer will have an agent and who will pay that agent's commission. *Id.* In fact, a buyer's agent could just as easily be involved in the sale of a property listed on Picket Fence as on Zillow.

Yet Picket Fence claims the risk that an agent will be involved vitiates Zillow's ability to call its listings "FSBO." But "FSBO" means just that, and nothing more—"for *sale* by *owner*." Whether the *buyer* hires an agent is irrelevant to the inquiry. And Picket Fence has never alleged, nor could it, that FSBO sellers are required to hire agents to list

properties on Zillow's website.  Even in the circumstance where a buyer hires an agent, if the seller does not wish to pay that agent's commission, the parties remain free to either work that out among themselves or walk away.  Because Picket Fence has failed to allege any false or misleading statement, the with-prejudice dismissal of the VCPA and Lanham Act claims should be affirmed.

Finally, Picket Fence has made no meaningful effort to defend its predatory pricing claim on appeal.  Despite an opportunity to amend, Picket Fence has made no effort to satisfy the stringent requirements of predatory pricing: below-cost pricing, intent to recoup, harm to the competitive market, and a causal relationship to Zillow's conduct.  Picket Fence's lengthy recitation of the history of antitrust law and its allegations of harm to itself "as a competitor" do not remedy these deficiencies.  Antitrust law protects *competition*, not competitors, and Zillow's free-listing model is only to the benefit of the consumer.

The district court properly dismissed the amended complaint, and this Court should affirm on all grounds.

## COUNTER-STATEMENT OF THE ISSUES

I.    Whether the district court properly dismissed Picket Fence's Vermont Consumer Protection Act claim.

II.    Whether the district court properly dismissed Picket Fence's Lanham Act claim.

## STATEMENT OF THE CASE

Picket Fence has allowed "private homeowners [to] pay to advertise their property directly to potential buyers" on its FSBO "marketplace," "bypassing . . . real estate agents and brokers," since 1993. JA8. Zillow launched in 2006 and has since become the nation's "most-visited real estate website." *Id.*; *Zillow*, Zillow.com (last visited Feb. 6, 2023), http://bit.ly/3D5fGv7. Zillow also allows "FSBO sellers to list their homes [on its site]"—but Zillow's FSBO listings are "free of charge." *See How To Sell Your House For Sale By Owner*, Zillow.com, http://bit.ly/3WuBmrE (last visited Feb. 6, 2023) [*How To Sell*]. Picket Fence claims it has experienced a "significant loss in revenue" because it "cannot compete" with Zillow's free FSBO listing service. JA18–19.

In an attempt to eliminate this competition, Picket Fence sued Zillow in 2020, alleging that Zillow violated Vermont and federal law by

"deceiving [FSBOs] to list their property" on Zillow instead of Picket Fence, and engaging in "predatory pricing" by making FSBO listings (which Picket Fence charges for) available for free. Since then, Picket Fence has advanced at least two different theories of deception and failed to plead any facts to support its predatory pricing theory.

## A. Picket Fence alleges that Zillow's free FSBO ads— undisputedly offered at no cost—were not truly "free."

In its original complaint, Picket Fence asserted claims for (I) "[u]nfair methods of competition . . . and unfair or deceptive acts or practices in commerce" in violation of the VCPA (9 V.S.A. § 2453(a)), and (II) violations of the Lanham Act, and (III) common-law "unfair competition." JA65–69. The VCPA claim at Count I included a conclusory list of the elements required to assert "unfair or deceptive acts or practices" ("deceptive-acts" claim, for short), while also alleging a predatory pricing theory and an "antitrust violation" under 9 V.S.A. § 2465 ("Antitrust remedies"). JA61, JA65–66; *see* 9 V.S.A. § 2453(a).

The VCPA deceptive-acts claim and the Lanham Act false-advertising claim were based on the same theory of deception: that Zillow's free FSBO listings were not really "free." JA64–65. Picket Fence acknowledged that Zillow did not charge FSBOs to list. JA94. Instead,

Picket Fence alleged that Zillow engaged in a "bait-and-switch," leading FSBOs "to believe they are getting a free ad to avoid paying a commission," only to "divert[] inquiries intended for the owner to real estate agents"—the "Premier Agents" who advertise with Zillow—by "list[ing them] first" and putting the FSBO seller's contact information "at the bottom of the list." JA58, JA60–63.

According to Picket Fence, buyers ended up "paying unnecessary fees to agents," incurring "a significantly higher cost to sell their property" ("3% or more in commissions") "than if they had listed it with a traditional [FSBO] publication" like Picket Fence, which charges "a modest fee." JA61–63. This "thwart[s] the [FSBO's] entire purpose" of "trying to avoid a commission for the sale of their property." JA63. In sum, the theory was that "Zillow has hidden the [commission] from the [FSBO sellers] and deceived them into believing by listing their property on Zillow's site they would avoid commissions." JA62.

Besides the claims premised on deception, Picket Fence also raised allegations of predatory pricing in violation of the VCPA. JA61. It asserted that Zillow's free listings "unlawfully undercut[] the prices" for FSBO advertising in a way that amounts to "unfair competition." JA61–

62. "Zillow claims it is offering a service for free, but in reality is charging the Premier Agents so they can advertise on . . . those free ads and receive hijacked inquiries from deceived buyers." JA61. "This creates an unfair playing field" in which "[p]otential customers have opted for [Zillow's] free listing . . . instead of using Picket Fence Preview, a . . . paid advertising publication." *Id.*

Picket Fence alleged that it had "showed a steady increase in gross revenue and profits" and was "beginning to expand and franchise" until Zillow "disrupted" the FSBO advertising market. JA63–64. It alleged that its revenues "began to decline almost every year thereafter," resulting in $3,400,000 in "lost profits" in 2017, and it will "los[e] over $142,000,000" by 2030, plus "losses . . . in the hundreds of millions" because it was "unable to fully develop" its plans for "expansion and franchising." JA64.

## B. The district court recognizes that Zillow never promised "a commission free sale."

Zillow moved to dismiss. JA3. At oral argument, the district court asked Picket Fence to clarify whether its VCPA claim was a "claim for deception or . . . an antitrust type of violation." JA72. Picket Fence initially said it was "both" (JA76), but later stated that it was only "suing

under [Section] 2465" and "not . . . under [Section] 2461(b)," which provides for a remedy for "false or fraudulent representations or practices." JA79; 9 V.S.A. § 2461.

The district court granted Zillow's motion in full. JA96. In response to Zillow's argument that Picket Fence was alleging harm to third parties such as FSBO sellers, the court agreed and dismissed any claims premised on harm to third parties for lack of jurisdiction. JA89.

The district court also dismissed Picket Fence's VCPA deceptive-acts claim for lack of standing. JA90. The court reasoned that Vermont law makes clear that only "consumers" have standing to sue under the statute's deception provision, and Picket Fence had alleged that it was a "competitor" of Zillow rather than a "consumer." *Id.* (citing *Rathe Salvage, Inc. v. R. Brown & Sons, Inc.*, 46 A.3d 891, 903 (Vt. 2012)).

The district court additionally dismissed Picket Fence's unfair competition VCPA claim, which was premised on a predatory pricing theory. JA92–93. It found that Picket Fence had failed to allege the required elements of predatory pricing, or that any antitrust injury had occurred "to consumers" or competition in general, as opposed to Picket Fence itself. JA92.

The court also dismissed Picket Fence's Lanham Act claim on the grounds that it had failed to allege that Zillow's FSBO listings were "either literally or impliedly false[]." JA94–95. "[Zillow]'s promise of a 'free' FSBO listing is not literally false because, as [Picket Fence] admits, [Zillow] does not charge sellers to post FSBO listings on its website." JA94. Nor was it "impliedly false because [Zillow] did not disclose that interested shoppers would be directed to Premier Agents." JA94–95 (quotation omitted). Zillow's "only promise to FSBO sellers is that it will list their real property at no cost to them"; Picket Fence has alleged no "representation by [Zillow] that any sales will be 'commission free' or any promise that a real estate agent will not be involved in a subsequent sale." JA95. Zillow's "listing focuses only on a preliminary step in a real estate transaction with no promise as to what happens thereafter," and "a customer who is promised a free listing is not promised a commission free sale either directly or by implication." *Id.*

Finally, Picket Fence's ill-defined common-law unfair-competition claim was deemed abandoned. JA96. Because all of the claims in the complaint were defective, the district court dismissed it in full. *Id.*

### C. Picket Fence's amended complaint claims Zillow's FSBO ads were not really FSBO ads.

Picket Fence was granted leave to amend and filed an amended complaint. JA3, JA96. Once again, Zillow moved to dismiss. JA4. This time, instead of alleging that Zillow's free FSBO listings were "not free" because a seller could be contacted by a represented buyer and end up paying a commission, Picket Fence used the same justification the district court had rejected—the possibility that a FSBO seller might ultimately pay a commission to a buyer's agent—to allege that Zillow's free FSBO listings are not FSBO listings at all. *See, e.g.*, JA27–28. The amended complaint abandoned both the bait-and-switch theory and the common-law unfair-competition claim, and it added no facts to supplement its deficient allegations of predatory pricing. *See* JA23–32.

Nor did it allege that Picket Fence was a "consumer" with standing to bring a deceptive-acts claim under the VCPA. Instead, in opposing Zillow's motion, Picket Fence argued that consumer standing should not have been required, as it was bringing its deceptive-acts claim not under the provision that provides a remedy for deception (which undisputedly requires the plaintiff to be a consumer), but under the *antitrust*-remedy provision. Dist. Ct. ECF 32 at 19.

The district court adhered to its earlier ruling, again dismissing Picket Fence's claims for lack of jurisdiction to the extent they alleged harm to third parties. JA44. And the court "decline[d] to re-examine" its earlier conclusion that Vermont law was clear: a plaintiff must be a consumer to bring a claim that consumers were deceived in violation of the VCPA, and Picket Fence had not alleged that it was a consumer. JA45–49. Picket Fence's predatory pricing claim, however, did not require consumer standing. JA48. But it again failed on the merits, raising only "vague and conclusory" allegations that "a FSBO seller may lose a sale from a buyer who uses a real estate agent and therefore [Zillow] has 'disrupted and perverted' the entire FSBO marketplace." JA51–52. The district court ruled that this did not state a plausible predatory pricing claim. JA52.

The district court further ruled that Picket Fence's new theory of deception did not state a Lanham Act claim, either. Again, Zillow's FSBO ads were not literally or impliedly false, for largely the same reasons as before. JA56. Picket Fence "concedes that FSBO sellers on [Zillow]'s website are not required to hire a real estate agent in order to list their real property for free," so Zillow's FSBO listings were not literally false.

JA54. Nor were they impliedly false; Zillow was "not alleged to have *required* [FSBO] sellers to use real estate agents," "*promised* a real estate agent would not be involved[,] or *represented* that a subsequent sale would be commission free." JA55. Zillow's "offer of a free FSBO listing focuses on a preliminary step in a real estate transaction, the advertising of a property for sale, with no guarantee as to what may happen thereafter." JA56. Picket Fence had not alleged any falsity, and thus failed to plead a plausible Lanham Act claim. *Id.*

The amended complaint was dismissed on these grounds, this time with prejudice. The district court entered judgment. *Id.*

## D. Picket Fence triples down on VCPA consumer standing.

Three weeks later, Picket Fence moved the district court to certify to the Vermont Supreme Court the question whether a plaintiff "need[s] to be a consumer to pursue an action under [the VCPA]" where it alleges "unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." Dist. Ct. ECF 42 at 1. The next week, Picket Fence timely appealed to this Court (JA5), and the district court ultimately denied the motion to certify for lack of jurisdiction. *Id.* Meanwhile, Picket Fence moved this Court to certify the same question.

2d Cir. ECF 34. Zillow opposed, pointing out that—as the district court had already twice ruled—the question of consumer standing under the VCPA was already conclusively resolved by the Vermont Supreme Court. 2d Cir. ECF 48 at 9–12. And in any event, consumer standing would not resolve this case; the VCPA predatory pricing and Lanham Act claims would still need to be resolved on their merits. *Id*. at 13–16. That motion remains pending. *See* 2d Cir. ECF 53.

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's thorough, well-reasoned decision in full.

I. The district court properly dismissed Picket Fence's VCPA claim at Count I, whether brought under a deceptive-acts theory or an unfair-competition theory (in this case, predatory pricing).

A. Although consumer standing pertains to only one of the claims and theories at issue in this case—VCPA deceptive acts—Picket Fence devotes much of its appellate brief to this threshold issue. But to no avail. Without exception, the plain text of the VCPA requires a plaintiff seeking a remedy for deception to be a consumer.

Apparently recognizing this limitation, Picket Fence tries to exempt itself from the standing requirement. It asks this Court to graft the elements of a VCPA deceptive-acts claim onto the remedy the statute provides for an *antitrust* violation, creating a new, "hybrid" cause of action under Vermont law.

But federal courts generally decline to take such drastic actions when applying state law, especially where the proposed approach is admittedly "novel"—indeed, the district court found no support for it after surveying Vermont and analogous federal court decisions. Vermont law is clear and settled: only a consumer can bring a deceptive-acts claim, and Picket Fence is not a consumer.

B. Even if Picket Fence had standing, its deceptive-acts claim would still fail on the merits. There simply was no "deception" here. As the district court recognized in the context of the Lanham Act, which applies a materially identical legal standard, Zillow represented only that FSBO sellers may list their homes on its site, for free. This is undisputedly true. Zillow makes no representation as to any subsequent step in the transaction, such as whether a prospective buyer is

represented by an agent or whether the FSBO seller will end up paying a buyer's agent a commission.

But even if there *had* been a misleading representation, the other elements of a VCPA deceptive-acts claim, reasonableness and materiality, are not satisfied. Picket Fence's interpretation of Zillow's FSBO listings assumes that just because the *seller* is unrepresented, the *buyer* will be, too—an objectively unreasonable assumption. Nor would any misrepresentation be material; a FSBO seller who lists for free on Zillow loses nothing, and is free to also list on Picket Fence, or on any number of other FSBO sites, or advertise through traditional methods like a classified ad or yard sign.

Picket Fence lacked standing to bring a VCPA deceptive-acts claim, and failed to satisfy even one of the substantive elements. The claim was properly dismissed.

C.    Picket Fence's amended complaint also purports to assert a VCPA claim for predatory pricing. But this claim has been deficient from the start—Picket Fence alleged no new facts to remedy the deficiencies the district court identified when it dismissed the original complaint. Predatory pricing is a high bar: a plaintiff must plead that the

defendant's prices were "below an appropriate measure" of its short-term costs and that it had "a dangerous probability[] of recouping its investment in below-cost prices." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222, 224 (1993). Picket Fence assumes (incorrectly) that Zillow engaged in predatory pricing merely because it made FSBO listings available for free and charged real estate agents to advertise on its site. But those facts do not allege any intention on Zillow's part to later charge FSBO sellers a higher price to make up for any shortfall.

Picket Fence also fails to allege the other elements of a predatory pricing claim: an antitrust injury attributable to anticompetitive conduct. Picket Fence alleges harm only to itself as a "competitor of Zillow"—not an antitrust injury to consumers or to the market. *See* Br. 33. To the contrary, lower prices *benefit* consumers. And there are countless reasons a consumer might choose Zillow (or any of the many other ways to list a home FSBO) over Picket Fence, none of which has anything to do with Zillow's conduct: for example, familiarity with a given platform, convenience, or even the aesthetic appeal of a website's interface.

Picket Fence has twice failed to allege predatory pricing. The district court's judgment of dismissal as to the VCPA claim (on either a predatory pricing theory or a deceptive-acts theory) should be affirmed.

II.    The district court properly dismissed Picket Fence's Lanham Act claim as well. Picket Fence makes no serious attempt—nor could it—to appeal the district court's ruling that Zillow's FSBO ads are not literally false. And its implied-falsity argument should be rejected for the same reasons as the VCPA deceptive-acts claim. The district court correctly found that Picket Fence had not alleged a misleading statement, because Zillow's *only* representation about its FSBO listings is that they are "for sale by owner," full stop. Zillow has never promised to bar FSBO buyers from using agents, nor to ensure that a FSBO seller will never pay a commission charged by a buyer's agent. And although the district court did not need to reach the reasonableness or materiality elements of the Lanham Act claim, the logic of its rationale forecloses those arguments as well. That claim, too, was properly dismissed.

The judgment should be affirmed in full.

## STANDARD OF REVIEW

This Court reviews a dismissal under Rule 12(b)(6) de novo. *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020). The legal standard is the same as in the district court: "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While factual allegations are accepted as true, "conclusory allegations or legal conclusions couched as factual . . . allegations" are not. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quotation omitted). The Court may affirm "on any basis supported by the record." *Dane*, 974 F.3d at 188 (quotation omitted).

## ARGUMENT

Picket Fence's brief addresses only the claims and theories raised in the amended complaint: (I) Count I, the VCPA claim, premised on both a deceptive-acts theory and a predatory pricing theory; and (II) Count II, the Lanham Act claim alleging false advertising. These claims fail as a matter of law, and the district court's dismissal should be affirmed in full.

## I. The district court rightly dismissed Picket Fence's VCPA deceptive-acts and predatory pricing claims.

Despite the district court's request for "clarification" (JA72), Picket Fence's amended VCPA claim still encompasses a mélange of theories: a "[t]hreadbare recital[] of the elements" of a deceptive-acts claim, allegations of "predatory pricing," and an "antitrust violation" under 9 V.S.A. § 2465 ("Antitrust remedies"). JA18, JA25, JA27.

Whether Picket Fence intended to bring a deceptive-acts claim, an unfair-competition claim, or both—the VCPA forbids "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices" (9 V.S.A. § 2453(a))—Count I was properly dismissed. The district court was correct that a VCPA claim premised on deceptive acts can only be brought by a consumer. JA49. But this Court does not even need to untangle the standing issue (let alone certify a question) to affirm the judgment on this claim, which fails on the merits as to either theory. Picket Fence alleged no deception that would support a deceptive-acts claim, and its allegations of predatory pricing remain wholly insufficient. The Court should affirm.

**A. Vermont law is clear that only a "consumer" can bring a deceptive-acts claim.**

The district court rightly "rejected [Picket Fence]'s argument that it need not be a consumer" to bring a claim for "deceptive acts or practices in commerce" in violation of the VCPA. JA49; *see* 9 V.S.A. § 2453(a). It did so twice. In its order dismissing the original complaint, the court reasoned that the VCPA's civil remedy for a deceptive-acts claim under 9 V.S.A. § 2461 is available only to "consumers," and because Picket Fence had alleged a "competitor" rather than a "consumer" relationship to Zillow, Picket Fence "cannot bring a claim . . . for a deceptive act." JA90.

In the amended complaint, Picket Fence did not allege that it was a consumer. Instead, it insisted that it was not required to be, because it was bringing its deceptive-acts claim not under the civil-penalty provision of Section 2461, but under the "[a]ntitrust remedies" provision of 9 V.S.A. § 2465. *See* JA25. Picket Fence evidently did so believing that a claim under Section 2465 would allow it to evade Section 2461's consumer-standing requirement for a deceptive-acts claim. Br. 28–29.

But after examining the text and structure of the statute and surveying relevant Vermont and federal law, the district court concluded that the VCPA does not allow this. JA45–48. "[T]he Vermont Legislature

has evinced no intent to create a hybrid claim that straddles sections 2453, 2461c, and 2465, cherry-picking elements of each." JA48. Picket Fence was thus required to be a consumer to bring a deceptive-acts claim; "[a] non-consumer competitor may not." *Id.* This was the correct reading of the statute, and this Court should affirm.

### 1. The district court's reading of the VCPA was correct.

Picket Fence leans heavily on policy and the history of antitrust law in arguing for its interpretation of the VCPA. *See* Br. 11–27. But this should be the *last* step in the statutory-interpretation analysis, not the first. Picket Fence never contends with the text of the statute—the place where the statutory-interpretation "inquiry begins." *Estate of Daniels v. Goss*, 274 A.3d 832, 837 (Vt. 2022). In Vermont, "courts interpret the statute according to the words the Legislature used" when its "intent can be ascertained from the plain meaning of the statute." *In re M.C.*, 204 A.3d 1123, 1125 (Vt. 2018) (quotation omitted); *see also Morenz v. Wilson-Coker*, 415 F.3d 230, 236–37 (2d Cir. 2005) (federal court applying state law also applies its "interpretive rules").

Only if the statutory text is ambiguous as to the legislative intent does the court need to "resort to statutory construction." *Daiello v. Town*

*of Vernon*, 282 A.3d 894, 902 (Vt. 2022) (quotation omitted).  This process entails an examination of "the "entire statutory scheme"—its structure, in light of its "purpose" and "effects" (*Estate of Frant v. Haystack Grp., Inc.*, 641 A.2d 765, 767 (Vt. 1994))—as well as its "legislative history" and "the policy at which the statute was aimed."  *Daiello*, 282 A.3d at 902.

**Text.**   Here, the VCPA's plain text answers the statutory-interpretation question whether consumer standing is required for a deceptive-acts claim.   Section 2453 of the VCPA proscribes "unfair or deceptive acts or practices in commerce."  9 V.S.A. § 2453(a).  The remedy for "false or fraudulent representations or practices prohibited by section 2453" is provided for in Section 2461, the VCPA's "[c]ivil penalty" provision.   *Id.* § 2461(b).   The relief provided for in that section is available to *"[a]ny consumer* who contracts for goods or services" or "sustains damages or injury as a result of any [of those] false or fraudulent representation[s] or practices."   *Id.* (emphasis added).   A consumer is "any person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services."   *Id.* § 2451(a).

As the district court recognized, the Vermont Supreme Court has repeatedly read the VCPA to mean what it says: to bring a deceptive-acts claim, a plaintiff must have been a consumer with respect to the defendant it was suing. JA46, JA90; *see Messier v. Bushman*, 197 A.3d 882, 891 (Vt. 2018) ("In order to recover under the [V]CPA, a plaintiff must establish that they are a consumer."); *Rathe Salvage*, 46 A.3d at 902 ("it remain[s] incumbent on [plaintiff] to prove itself a 'consumer' under the [VCPA]"); *see also Carter v. Gugliuzzi*, 716 A.2d 17, 21 (Vt. 1998) (in deceptive-acts claim, Section 2461(b) "provides a remedy for any consumer who contracts for goods or services").

This Court need go no further. "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (quotation omitted).

**Structure.** Because the VCPA's consumer-standing requirement is unambiguous, a statutory-interpretation analysis is not necessary. But even if the Court were to conduct one, it would yield the same conclusion. If a court must go beyond the plain text of a statute, it looks first to the structure of the "entire statutory scheme," in light of its

"purpose, effects[,] and consequences." *Daniels*, 274 A.2d at 837 (quotations omitted).

An examination of the structure of the statute confirms that the Vermont General Assembly intended to treat deceptive-acts claims differently from unfair-competition or antitrust claims. Section 2453(a) of the VCPA proscribes two distinct categories of conduct: "unfair or deceptive acts or practices," and "[u]nfair methods of competition." As explained above, the first category, deceptive-acts claims alleging harm "as a result of any false or fraudulent representations or practices prohibited by section 2453," are remediated by the VCPA's "[c]ivil penalty" provision, Section 2461(b). *See Carter*, 716 A.2d at 21. And Section 2461(b) states that "[a]ny consumer . . . who sustains damages or injury as a result of" a deceptive act or practice may sue. 9 V.S.A. § 2461(b). The district court pointed out that both "Sections 2453"—titled in part "consumer protection"—"and 2461(b) both use the term 'consumer.'" JA48 (alteration omitted). The deceptive-acts cause of action is thus linked to a remedy available only to consumers.

The second category of conduct that Section 2453(a) proscribes is unfair methods of competition." These are the "antitrust" violations that

the other half of the section's title ("*antitrust* and consumer protection" (emphasis added)) refers to. Remedies for this class of claims are found not in Section 2461(b), which limits itself to deceptive acts, but elsewhere in the statute. For example, Section 2461c provides for a remedy for predatory pricing, an "an unfair method of competition" in which "goods or services [are priced] in a manner that tends to create or maintain a monopoly or otherwise harms competition." 9 V.S.A. § 2461c(a), (e); *see* JA48 ("§ 2461c of the VCPA provides a state analog to the federal antitrust laws"). And Section 2465—the section Picket Fence purports to sue under—was enacted in 2000 as a "specific antitrust remedy provision" for "indirect purchaser antitrust actions based on a violation of § 2453." *Elkins v. Microsoft Corp.*, 817 A.2d 9, 17 (Vt. 2002).

The structure of the statute thus separates the remedial provisions for deceptive acts from the remedial provisions for unfair competition. The former are available only to consumers; the latter are available to "[a] person" or "any person." *Compare* 9 V.S.A. § 2461(b), *with id.* §§ 2461c(e), 2465(a). There is no dispute that "any person" means what it says. *See, e.g.*, Br. 14, 20. But those broadly available remedies only apply to unfair-competition/antitrust claims, *not* deceptive-acts claims.

The point is not that "causes of action[] under 9 V.S.A. § 2465 [are limited] only to consumers" (Br. 21)—it is that Section 2465 is limited to antitrust causes of action.

This view of the statutory scheme is consistent with the VCPA's purpose: "to *complement the enforcement of federal statutes and decisions governing unfair methods of competition, unfair or deceptive acts or practices, and anti-competitive practices* in order to protect the public and to encourage fair and honest competition." 9 V.S.A. § 2451 (emphasis added). Accordingly, Vermont courts interpreting the VCPA are "guided by the construction of similar terms" in the Federal Trade Commission Act. 9 V.S.A. § 2453(b). The district court specifically noted that the FTC "has not approved of a claim brought by a competitor who seeks to vindicate the rights of consumers subjected to allegedly deceptive practices." *See* JA47. Picket Fence may not do so. *See* Br. 24.

***Legislative history.*** If it were necessary for the Court to go further and examine the legislative history of the relevant provisions of the VCPA (*see Daiello*, 282 A.3d at 902), it still would not support Picket Fence's hybrid-claim theory. Rather, the legislative history underscores that Section 2465 is an antitrust remedy, and "[t]he relief available under

§ 2461(b) [applies] to a *consumer* who has been victimized by an unfair or deceptive commercial practice." Br. 14 (emphasis added) (quoting *Gramatan Home Invs. Corp. v. Starling*, 470 A.2d 1157, 1162 (Vt. 1983)).

Picket Fence argues that the amendments that added Section 2465 to the VCPA were part of a historical trend "allowing for private rights of actions by consumers and expanding that to 'any person' which includes the right for businesses which were not consumers to sue." Br. 14, 16. But *Elkins v. Microsoft Corp.* (Br. 7, 22) forecloses this reading. *Elkins* stands for the proposition that, because the VCPA "contains no privity requirement," an indirect purchaser who purchased a product from a third party is a "consumer" with standing to bring an unfair-competition claim against the manufacturer. 817 A.2d at 12. This holding is not relevant to this case, as Picket Fence does not allege an indirect-purchaser relationship with Zillow. *See* Br. 7.

*Elkins* is instructive, however, in that it analyzed the legislative history of "Act 65 of 2000," in which Section 2465 was enacted. 817 A.2d at 17. The "express legislative purpose" of the section was to "clarif[y] the right of a direct or indirect purchaser to obtain recovery for a violation of the state antitrust law." *Id.* (quoting Statement of Intent, 1999, No. 65

(Adj. Sess.), § 1). This "was a clarification" that "an indirect purchaser was entitled to bring a cause of action under the [VCPA]" "and not necessarily a substantive change in the preexisting law"; it "did not effectuate a change in Vermont law." *Id.* at 17–18. It certainly did not "expand" the remedy available for deceptive-acts violations beyond consumers (*see* Br. 16), as even in an unfair-competition action like *Elkins*, the plaintiff was a consumer. Nor did the General Assembly take the opportunity at the time Section 2465 was enacted to adopt the *Restatement* principles Picket Fence cites. *See* Br. 19–20.

**Policy.** The last step in a statutory construction is a policy analysis. *Daiello*, 282 A.3d at 902. Picket Fence's lengthy policy arguments about protection for competitors (*see, e.g.*, Br. 13, 15, 18–19) do not reflect the policy concerns that underlie the VCPA: "protect[ing] *the public* and [] encourag[ing] fair and honest competition." 9 V.S.A. § 2451. "It is the protection of *competition*, rather than the protection of *competitors*, that antitrust laws are designed to protect." *Franklin Cnty. Sheriff's Office v. St. Albans City Police Dep't*, 58 A.3d 207, 214 (Vt. 2012) (emphases added). And the relative size of the competitors (*see* Br. 1) does not matter, as "antitrust laws do not require the courts to protect

small businesses from the loss of profits due to continued competition."
*Cargill, Inc. v. Monfort of Colo.*, 479 U.S. 104, 116 (1986).

No policy goal requires this Court to protect a self-avowed "competitor" (Br. 33) from competition. And even if there were such a policy, it could not overcome the plain language of the VCPA. *See, e.g.*, *Gray v. Treder*, 204 A.3d 1117, 1120 (Vt. 2018) (concluding that "public policy" principle did not "overcome the plain language of the statute"); *United States v. Peterson*, 394 F.3d 98, 107 (2d Cir. 2005) ("our conclusion that the statute is unambiguous obviates any need to consider . . . the public policy arguments"). Picket Fence argues that *Elkins* and other Vermont cases require the Court to construe this "remedial" statute liberally (Br. 22), but that "does not mean ignoring the plain meaning of the language within those provisions." *Toensing v. Att'y Gen. of Vermont*, 212 A.3d 180, 184 (Vt. 2019) (goal is "to implement the policy . . . *as set forth in* the [statute]" (emphasis added)).

There is no support anywhere in the statutory-interpretation analysis for Picket Fence's novel and unfounded "hybrid claim for deceptive practices." Br. 5. The legislature's standing requirement—

that the claim be brought by a consumer—is absolute. By its own admission, Picket Fence is not a consumer, and so its claim must fail.

## 2. Vermont case law confirms the district court's reading.

Certification of the consumer-standing question to the Vermont Supreme Court is unnecessary to rule out this "hybrid claim" theory. *See* Br. 5–8. As Zillow explained in greater detail in its opposition to Picket Fence's motion to certify, certification is unnecessary here. 2d Cir. ECF 48. "The VCPA has been the subject of ample litigation in Vermont's courts." JA48; *see, e.g.*, *Messier*, 197 A.3d at 891 (requiring plaintiff to be a consumer to bring a consumer-standing claim); *Rathe Salvage*, 46 A.3d at 902 (same); *Carter*, 716 A.2d at 21 (same). When the district court said "there [we]re no controlling decisions in Vermont" (Br. 7), it meant that no Vermont case *supports Picket Fence's position*. "Neither the Vermont Supreme Court nor any trial court in Vermont has held that the VCPA authorizes a hybrid claim for deceptive practices brought by a competitor where the challenged practices are alleged to have harmed consumers." JA48.

Another federal court confronted with the same issue reached the same conclusion. As here, the plaintiff in *Northeast Farm Sales &*

*Service, Inc. v. Krone NA, Inc.*, "admit[ted] that 9 V.S.A. § 2461 permits only a 'consumer' to bring suit for deceptive acts or practices prohibited by § 2453," but "contend[ed] that 9 V.S.A. § 2465 affords a less restrictive remedy to 'any person,' including parties who are not consumers."  2018 WL 11469704, at *3 (D. Vt.).  The court declined to "read § 2465 in way that would remove a substantive element of a claim under § 2453"—consumer standing—as "§ 2465 does not and was never meant to do so."  *Id.* at *4.

Finding no purchase for its hybrid claim in Vermont law, Picket Fence looks to several *other* states' laws for support.  Br. 25–27.  These arguments are all raised for the first time in this Court and are thus forfeit.  *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005) (general rule is that "an appellate court will not consider an issue raised for the first time on appeal" (quotation omitted)); *see also In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (court will not address new arguments that "were available . . . below" and "no reason [is given] for their failure to raise" them (quotation omitted)).

In any event, Picket Fence's state-law arguments beyond Vermont also lack merit.  They rest on the same flawed premise as Picket Fence's

own claims: none of these statutes or cases permits a competitor (or anyone else without a business relationship to the defendant) to bring a "hybrid" consumer-deception claim under an antitrust remedy found in a separate provision of the statute.  In New York, for example (Br. 25), the same "[d]eceptive acts and practices" section of the statute sets forth both the cause of action and the remedy.  *See* N.Y. Gen. Bus. Law § 349(a), (h). And the Nebraska remedy Picket Fence cites (Br. 26–27) expressly cross-references the section proscribing "deceptive acts or practices"—and still limits recovery to direct or indirect purchasers (as the language Picket Fence quotes acknowledges) or those who "refuse[] to accede to a proposal for [a monopolistic] arrangement."  Neb. Rev. Stat. § 59-1609 (citing *id.* §§ 59-1602–06).  *Jenkins v. General Collection Co.* (Br. 27), where the plaintiffs were debtors, not competitors, and the issue was whether the statute covered collection actions, does not support Picket Fence's theory either.  538 F. Supp. 2d 1165, 1176 (D. Neb. 2008).

Indeed, none of the cases Picket Fence cites on this point involved competitors.  *See, e.g.*, *Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1152 (9th Cir. 2011) (Nevada law) (plaintiff retirement community had standing as a "victim of consumer fraud" where defendant home inspector

made fraudulent contracts with its residents); *see also Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 888 (Wash. 2009) (individuals had standing to sue company that targeted them with false collection notices).

Importantly, even if other states did permit litigants to bring one type of consumer-protection claim under a remedy meant for another, *it would not mean Vermont does*. Each state has the sovereign right to promulgate and enforce its own laws. *See Pink v. A.A.A. Highway Express, Inc.*, 314 U.S. 201, 246–47 (1941) (states' sovereignty "precludes . . . compelling one state wholly to subordinate its own laws and policy concerning its peculiarly domestic affairs to the laws and policy of others"). And their courts are free to reach different conclusions as well. *See, e.g.*, *H.D. Oliver Funeral Apts., Inc. v. Dignity Funeral Servs., Inc.*, 964 F. Supp. 1033, 1038–39 (E.D. Va. 1997) (no competitor standing for deception claim under Virginia consumer statute, despite "any person" language). The fact is, neither any court in Vermont nor "the Vermont Legislature has evinced [any] intent to create a hybrid claim" by "cherry-picking elements" of different sections of the VCPA. JA48. Picket Fence's novel theory has been conjured from whole cloth to meet its own design, and it has no basis in Vermont law. *See Michalski v. Home Depot, Inc.*,

225 F.3d 113, 116 (2d Cir. 2000) (prediction only necessary "[a]bsent law from a state's highest court").

\*     \*     \*

In sum, Picket Fence asks this Court to stitch together two disparate provisions of the VCPA—a deceptive-acts claim and an antitrust remedy—into a new "hybrid" cause of action under Vermont law. The "role [of] a federal court sitting in diversity is to construe and apply state law as . . . the state's highest court would, not to adopt innovative theories that may distort established state law." *City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1153 (2d Cir. 1989) (citation omitted). Federal courts do not create new state-law causes of action. *See, e.g.*, *Klump v. Nazareth Area Sch. Dist.*, 425 F. Supp. 2d 622, 642 (E.D. Pa. 2006) ("We will not create a new judicial remedy which the Pennsylvania courts themselves have declined to recognize under similar circumstances."); *Duncan v. Nw. Airlines, Inc.*, 203 F.R.D. 601, 609 (W.D. Wash. 2001) (declining to recognize independent tort of medical monitoring where there was "no reason to believe the Washington Supreme Court would"). The Court should decline to do so here.

Picket Fence is not a consumer and therefore lacks standing to bring a deceptive-acts claim under the VCPA. The analysis ends there. Dismissal of that claim was proper and should be affirmed.

## B. Even if there had been standing, Picket Fence's deceptive-acts claim would have failed on the merits.

This Court need not answer the consumer-standing question at all, however, as Picket Fence's deceptive-acts claim fails on its merits. *See Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 106 (2d Cir. 2022) (this Court may "affirm on any ground with support in the record, including grounds upon which the district court did not rely" (quotations omitted)).

A VCPA claim for "unfair or deceptive acts or practices in commerce" (9 V.S.A. § 2453(a)) has three elements: (1) a "representation" that "was likely to mislead consumers," (2) "the consumer's interpretation . . . was reasonable under the circumstances," and (3) "the misleading representation was material in that it affected the consumer's purchasing decision." *Jordan v. Nissan N. Am., Inc.*, 853 A.2d 40, 43 (Vt. 2004). For its deceptive-acts claim to survive, Picket Fence needed to allege facts to support all three elements; it plausibly pled none.

### 1. Zillow's FSBO listings, which make no promises as to whether a buyer will be represented, are not misleading.

The dismissal of Picket Fence's VCPA deceptive-acts claim should be affirmed for the same reasons as the district court dismissed the Lanham Act claim (*see infra* Part II): it cannot plausibly allege a "representation or omission [that] had the tendency or capacity to deceive a reasonable consumer." *Jordan*, 853 A.2d at 43.

Technically, Picket Fence identifies no specific "representation" at all. *See* JA55 (Zillow's "representations . . . are not described in the [amended complaint]"). Although it was not material to the district court's decision (*contra* Br. 36), the amended complaint and Picket Fence's briefing make vague references to Zillow's "offer of a free FSBO advertisement" but do not say precisely what Zillow is offering. *See, e.g.*, Br. 34; JA10. And Zillow's definition of a FSBO is a curious omission from the amended complaint's list of *other* websites' definitions. *Compare* JA9 (Redfin: "For-sale-by-owner refers to a home that the owner is selling without the services of a licensed real estate agent."), *with How To Sell* ("For sale by owner is a home-selling strategy in which the seller lists their home for sale on their own, without the help of a real estate agent").

But even under Picket Fence's *own* definition—"[i]n a FSBO advertisement, the owner sells the property without the use or help of a real estate agent or a broker" (JA9)—any representation that Zillow offers FSBO listings is true. Zillow allows owners to list their homes for sale on its website without the assistance of an agent. Notably, Picket Fence, which also allows FSBO sellers to "advertise their property directly to potential buyers, bypassing the use of real estate agents and brokers," makes the same representation. JA8.

Picket Fence's theories of deception have changed over time as each version failed to gain purchase with the district court. The original complaint alleged that Zillow's FSBO listings were not truly "free" because a prospective buyer can connect with a Premier Agent through the site, creating the possibility that a FSBO seller could end up selling their home to a represented buyer and having to pay a commission. *See* JA60–61. Addressing the issue in the context of the Lanham Act, the district court rejected the premise: Zillow allowed FSBO sellers to *list* for free; it made no "representation . . . that any *sales* will be 'commission free.'" JA54 (emphasis added) (quoting earlier opinion); *see also* JA55.

The amended complaint takes the same debunked premise even further.  It alleges that Zillow FSBO listings that "divert[]" potential buyers toward Premier Agents are not actually FSBO listings at all, as "[s]ellers typically choose to sell their home on their own to avoid paying the real estate agent the commission for the transaction." *See, e.g.*, JA9–10.  But this theory conflates the *seller's* agent with the *buyer's* agent.  The amended complaint does not (and cannot) allege that a Zillow FSBO listing requires the FSBO *seller* to use a listing agent or pay *their own* agent a commission; in fact, Picket Fence "concedes that FSBO sellers on [Zillow]'s website are *not* required to hire a real estate agent in order to list their real property for free." JA54.  Nor does Picket Fence allege that a Zillow FSBO listing bars the buyer from hiring an agent.  Just because a FSBO *seller* is unrepresented does not mean a *buyer* will also be unrepresented, and Picket Fence has never alleged that Zillow stated otherwise.

The district court recognized this distinction when, for the second time, it rejected Picket Fence's theory of consumer deception in the Lanham Act context, where the standard for implied falsity mirrors that of deception under the VCPA.  JA55–56; *compare Apotex Inc. v. Acorda*

*Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016) (impliedly false statement under Lanham Act must be "likely to mislead or confuse consumers" (quotation omitted)); *with Carter*, 716 A.2d at 23 (deceptive act for VCPA purposes must be "likely to mislead consumers").

The district court found Picket Fence's "allegations regarding consumer deception"—that consumers assumed Zillow's free FSBO listings "would be a cheaper alternative" to Picket Fence's paid listings, only to later "complain about the deception on Zillow" and state that they would have listed on Picket Fence "had they known the truth about how Zillow operated its website"—to be "both vague and conclusory." JA55 (quoting amended complaint).

But even assuming their sufficiency, Picket Fence has never alleged a "false or misleading representation" by Zillow. *Id.* There is no dispute that a FSBO seller "who seeks to sell his or her real property without using a real estate agent may list the property for free on [Zillow]'s website." And Zillow "is not alleged to have *required* these sellers to use real estate agents at any point in the transaction," "*promised* a real estate agent would not be involved[,] or *represented* that a subsequent sale would be commission free." *Id.* Once again, the district court reinforced

the flawed premise of Picket Fence's allegations: Zillow's "offer of a free FSBO listing focuses on a preliminary step in a real estate transaction, the advertising of a property for sale, with no guarantee as to what may happen thereafter." JA56. And the "FSBO seller remains free to . . . refuse to deal with a real estate agent" or "pay a commission." *Id*. There was no misleading representation. *See id.*

Zillow has represented only that a seller who wishes to sell their home without a listing agent may post a free FSBO listing on its site. This is true. Without any deceptive or misleading statement by Zillow, Picket Fence's VCPA deceptive-acts claim was properly dismissed.[1]

---

[1] Picket Fence offers a backup argument: that "it is also a violation of the [VCPA] to violate any rule or regulation promulgated by the Vermont Attorney General's Office." Br. 30. But Picket Fence has never alleged any such violation (or even cited a rule or regulation) in either of its complaints. Picket Fence cannot now bootstrap the argument that the very conduct at issue in this case is the violation (and in any event, the VCPA is the product of the Vermont General Assembly, not the Attorney General). It is true, however, that deceptive-acts claims are typically premised on preexisting, independent violations of other state and federal laws. *See, e.g., Moffitt v. Icynene, Inc.*, 407 F. Supp. 2d 591, 604 (D. Vt. 2005) (citing *L'Esperance v. Benware*, 830 A.2d 675 (Vt. 2003) (landlord rented apartment in violation of law); *Bisson v. Ward*, 628 A.2d 1256 (Vt. 1993) (same); *Peabody v. P.J.'s Auto Vill., Inc.*, 569 A.2d 460 (Vt. 1989) (failure to disclose used car's condition in violation of FTC regulation)). None is alleged here, supplying another, independent ground to affirm the dismissal of the VCPA deceptive-acts claim.

### 2. Picket Fence's interpretation of FSBO is unreasonable.

Even if Picket Fence had alleged a deceptive representation, Picket Fence would still have to show that the deceived consumer "interpret[ed] the message reasonably under the circumstances." *Peabody*, 569 A.2d at 462 (quoting *Poulin v. Ford Motor Co.*, 513 A.2d 1168, 1171–72 (Vt. 1986)); *Carter*, 716 A.2d at 23.

It is not reasonable for a FSBO seller to also "assume" that none of the potential buyers in the "largest audience of home shoppers on the web" would be represented by a real estate agent. *See* JA26. Nor would it be reasonable for a FSBO seller to maintain "express intent" that Premier Agents not advertise on their listing when these listings commonly, and visibly, include links to agents. JA19; *see also* JA34–35 (sample listings attached to amended complaint).

Although the district court did not need to reach the reasonableness issue, its logic in rejecting Picket Fence's Lanham Act claim applies equally here. The court recognized that Zillow had made "no guarantee as to what may happen" after a FSBO seller lists their home. JA56. Zillow never represented that "a real estate agent will not be involved in a subsequent sale." JA54. Zillow's FSBO listings therefore cannot be

reasonably interpreted to mean that only unrepresented buyers will contact the seller or that a sale will be commission-free. Zillow (or Picket Fence, or the FSBO seller) cannot control whether a potential buyer hires an agent, and an interpretation that suggests otherwise is unreasonable.

Picket Fence's amended complaint relies on the subjective "assum[ptions]" of consumers it claims were deceived. *See* JA26. But as it now concedes, this is an "objective standard." Br. 29 (quoting *Carter*). "[A] representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." *Ehlers v. Ben & Jerry's Homemade Inc.*, 2020 WL 2218858, at *6–7 (D. Vt.) (interpretation of product description on website was unreasonable for purposes of VCPA deceptive-acts claim where plaintiff did not "point to an actual misrepresentation, but instead relie[d] exclusively on his [own] interpretation").

The dismissal of the VCPA deceptive-acts claim may be affirmed on this ground as well.

### 3. The alleged misinterpretation is not material.

The third element of a VCPA deceptive-acts claim is materiality: "[T]he misleading effects [of a representation] must be . . . likely to affect [the] consumer[']s conduct or decision with regard to a product." *Peabody*, 569 A.2d at 462 (quotation omitted). Picket Fence offers no materiality argument, and the district court did not reach it. But it is a required element and thus another independent ground for dismissal.

Picket Fence alleges that Zillow's FSBO ads "stopped them from seeking alternative means of advertising their property with competing businesses like Picket Fence Preview," and "had they known the truth . . . , they would have chosen to advertise with Picket Fence." JA11, JA26. These allegations are based on false premises as well. As the district court pointed out in its analysis of another issue, Zillow "do[es] not preclude consumers from advertising with multiple FSBO listing services simultaneously." JA52. FSBO sellers are free to advertise with Picket Fence, Zillow, both, other similar services, or none at all. *See* Dist. Ct. ECF 26 at 31 (district court at motion-to-dismiss hearing: FSBO sellers can "pay to go to Picket Fences" and "also pay to have lawn signs and put up [their] own notices and do whatever else [they] want to do").

Zillow's allegations presume without basis that the FSBO market is a zero-sum game in which a FSBO seller must use one (and only one) means of advertising—either Picket Fence or Zillow. None of this has been alleged, nor could it be, because it is not true. Indeed, because Zillow's FSBO listings are free of charge, there is no financial disincentive for a FSBO seller who lists on Zillow not to spend the "modest fee" to also list with Picket Fence. *See* JA26.

The possibility that a FSBO seller will be contacted by a represented buyer is not material either, as that risk exists no matter whether a FSBO seller lists on Zillow or another service—including Picket Fence. As the district court observed at oral argument, and Picket Fence's counsel conceded, "somebody can show up with a buyer's agent who's looking for a commission" under *either* business model. Dist. Ct. ECF 26 at 32.

In sum, every element of Picket Fence's VCPA deceptive-acts claim is deficient, and the district court properly dismissed it with prejudice. This Court should affirm.

**C.  Picket Fence's predatory pricing allegation is deficient.**

Unlike the VCPA deceptive-acts claim, there is no dispute that Picket Fence's VCPA predatory pricing claim does not require consumer standing.  *See* 9 V.S.A. § 2461c(a).  But, as the district court properly ruled, the predatory pricing claim fails on the merits.

Predatory pricing, a species of "unfair competition," occurs when a market participant "price[s] goods or services in a manner that tends to create or maintain a monopoly or otherwise harms competition."  9 V.S.A. § 2461c(a).  In essence, it "bites the bullet and forgoes present revenues to drive a competitor from the market, with the intent to recoup lost revenues through higher profits when it succeeds in making the environment less competitive."  *Franklin Cnty.*, 58 A.3d at 214 (quotations omitted).

As Picket Fence concedes (Br. 32), a plaintiff alleging predatory pricing must prove the defendant's prices were "below an appropriate measure" of its short-term costs, and that it had "a dangerous probability[] of recouping its investment in below-cost prices."  *Brooke Grp.*, 509 U.S. at 222, 224.

The complaint, however, did not adequately plead either of these things (JA92), and given the chance to amend, Picket Fence added no facts to address the deficiencies the district court had identified. *See, e.g.*, JA27 (baldly accus[ing] Zillow of "predatory pricing and [an] attempt to create a monopoly"). Picket Fence's narrative—that "Zillow claims it is offering a service for free, but in reality is converting [FSBO] advertisements into a source of contacts for Premier Agents," who "illegally offset the costs" such that Picket Fence "cannot compete" (JA17–18)—does not plausibly establish either element, or the requisite injury and causation.

*Below-cost pricing.* As the district court pointed out, Picket Fence did not attempt to plead any facts showing that Zillow's FSBO listings are below its costs. JA50 & n.3. The analysis thus ends there. But even accepting (for argument's sake) Picket Fence's conclusory allegation that Zillow's FSBO listings are "clearly below [Zillow's] costs" (Br. 32), "[e]vidence of below-cost pricing is not alone sufficient to permit an inference of probable recoupment and injury to competition." JA51 n.3 (quoting *Brooke Grp.*, 509 U.S. at 226).

***Recoupment.***  Picket Fence argues that "Zillow sought to recoup its costs by changing the offer of a FSBO advertisement to one for its Premier Agents and recovered its costs from agents."  Br. 32–33.  But, as the district court observed, there is no "dangerous probability of [Zillow] recouping its investment by raising the price of FSBO listings in the future."  JA50–51; *see Franklin Cnty.*, 58 A.3d at 214.  The amended complaint "contains no allegation that [Zillow]'s source of income or pricing methodology will change once competition has been eliminated from the market."  JA51.

***Antitrust injury.***  A viable antitrust claim also requires an "antitrust injury," that is, an injury to competition in the market. *Cargill*, 479 U.S. at 117–18; *see Franklin Cnty.*, 58 A.3d at 213–14.  Picket Fence does not allege this; instead, it alleges harm to itself as "a competitor of Zillow."  Br. 33; *see* JA18–19, JA27 (alleging that Picket Fence "cannot compete").  The district court was right that Picket Fence's "own loss of revenue . . . will not suffice" to establish antitrust injury. JA51.  Antitrust laws were designed for "the protection of competition, rather than the protection of competitors."  *Franklin Cnty.*, 58 A.3d at 214 (cited at JA51).  Picket Fence's conclusory allegation that Zillow's

free FSBO ads "disrupted and perverted" the FSBO marketplace (JA21) is not accompanied by factual allegations showing that "the average sale price is higher for home sales resulting from [Zillow]'s website or that consumers are forced into using real estate agents against their will." JA51. Absent this evidence, "low prices today" mean "only good things happen for consumers." JA52 (quotation omitted).

***Causation.*** Even if Picket Fence could plead an antitrust injury, it could not connect it to Zillow. The alleged antitrust "injury [must be] causally linked to an illegal presence in the market." *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Assuming for argument's sake that the damages Picket Fence alleges were anything other than "fanciful" (*see Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("facts that are clearly baseless" cannot support a claim (quotation omitted))), and were associated with an actual antitrust injury, they are predicated on the faulty assumption that the FSBO business Picket Fence lost necessarily—and exclusively—went to Zillow, and that the explanation was anticompetitive. *See* JA18. But Zillow's "practices do not preclude consumers from advertising with multiple FSBO listing services simultaneously." JA52. And there are many benign

explanations for why an FSBO seller might not list with Picket Fence: they could find its interface unappealing, or they might place a sign in their yard, take out a newspaper ad, or list on any of dozens of free online sites besides Zillow. Indeed, the continued existence of these other sites (including Craigslist, Realtor.com, Facebook, hotpads.com, ForSaleBy Owner.com, and Redfin, as just a small sample) belies Picket Fence's allegations that Zillow is "creating a monopoly." Br. 33.

In sum, these "prerequisites to recovery" for predatory pricing are "essential components of real market injury"—and Picket Fence twice failed to plead them. *See* JA52 (quoting *Brooke Grp.*, 509 U.S. at 226). Predatory pricing is "rare[]" (*see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 589–90 (1986)), and the district court rightly recognized that this is not an instance of it. The Court should affirm the dismissal of Picket Fence's VCPA predatory pricing claim.

## II. The district court rightly dismissed the Lanham Act claim, as Picket Fence alleged nothing false about Zillow's FSBO listings.

The district court rightly dismissed the Lanham Act claim, as Picket Fence alleged no false representation on Zillow's part. This claim fails for largely the same reasons as the VCPA deceptive-acts claim,

which also presupposes a misleading statement. *See supra* Part I.B.1. Zillow offered to let FSBO sellers list their own homes for free (and did so), making no promises about any transaction thereafter. JA55.

Assuming Picket Fence has standing to bring a Lanham Act claim (JA94; *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)), it "must establish that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, 843 F.3d 48, 65 (2d Cir. 2016). "Falsity may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse customers." *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001) (quotation omitted).

Although Picket Fence identifies no specific representation by Zillow (JA55), it alleges that "Zillow provided false or misleading statements by claiming to provide free [FSBO] advertisements to parties selling their own homes" (JA28), but "[u]nknown to the [FSBO seller] advertising on Zillow, potential buyers are directed to Zillow's Premier

Agents instead of to the seller who is trying to sell the home without using a realtor." Br. 3. As discussed below, even if assumed true, this does not provide a basis for Picket Fence's claim.

***Falsity.*** The Lanham Act claim fails as a matter of law, as Zillow made no statement that was literally or impliedly false (i.e., likely to deceive). JA54–56. Accepting Picket Fence's definitions of "FSBO," "each of which define the term as property sold without the use of a seller's agent," Zillow's FSBO listings are "not literally false" because (as Picket Fence concedes) "FSBO sellers on [Zillow]'s website are not required to hire a real estate agent." JA54. Picket Fence barely raises this issue on appeal. Br. 36; *see Ebomwonyi v. Sea Shipping Line*, 2022 WL 274507, at *1 (2d Cir.) (raising issue in "cursory" manner waives it).

Instead, Picket Fence focuses on implied falsity. The district court found none: a FSBO seller may list on Zillow, which "is not alleged to have required these sellers to use real estate agents at any point in the transaction," "promised a real estate agent would not be involved," or "represented that a subsequent sale would be commission free." JA55. Zillow's "offer of a free FSBO listing focuses on a preliminary step in a real estate transaction, the advertising of a property for sale, with no

guarantee as to what may happen thereafter." JA56. If a buyer shows up with an agent, the seller remains free to "refuse to deal with a real estate agent and refuse to pay a commission." *Id.*

Picket Fence attempts to attack this common-sense finding by arguing that Zillow's FSBO listings "meant something different to [FSBO sellers] than what Zillow was offering" by "directing all inquiries to Premier Agents." Br. 40. It cites *Church & Dwight* to show that even a literally true statement can be impliedly false if that statement is misleading. Br. 37–38. But *Church & Dwight* is inapposite—the pregnancy-test advertisement at issue there departed from a broadly accepted industry-standard definition of how to measure the length of a pregnancy. 843 F.3d at 66. Here, by contrast, Picket Fence's own definition of "FSBO" supports *Zillow*'s position—it states that "*the owner sells the property without the use or help of a real estate agent or a broker,*" and says nothing about whether a buyer is likely to be represented. JA9 (emphasis added). The other definitions of FSBO in the amended complaint, pulled from websites, all confirm that the defining feature of FSBO selling is that *the seller* does not hire a real estate agent—whether the buyer is represented is irrelevant. JA52.

Setting aside these definitions, as the district court did, Zillow is still "not alleged to have promised a real estate agent would not be involved or represented that a subsequent sale would be commission free." JA55.

*REX – Real Estate Exchange Inc. v. Zillow Inc.* is also distinguishable. *See* Br. 42. That case involves a change Zillow was required to make to its interface when it became a participant of the Multiple Listing Service (MLS). *REX*, 2021 WL 3930694, at *2 (W.D. Wash.). To comply with the relevant rule, Zillow separated MLS listings and non-MLS listings into two tabs: "Agent listings," containing the MLS listings, and "Other listings," containing the non-MLS listings, including those of REX, which was not an MLS member but allegedly employed licensed agents. *Id.*

At that point in the case, whether there had been a misrepresentation was not in dispute. *Id.* at *9. The only question was whether REX's "fraud-based allegations" (i.e., that the misrepresentation was allegedly made to influence consumers to use its "Zillow Offers" home-buying business) satisfied Rule 9(b)'s heightened pleading requirements. *Id.* at *8–9. Picket Fence's argument that Zillow "mislead[s]" FSBOs "intentionally," to "feed leads generated by its false

FSBO advertisements . . . to its Premier Agents" also raises the issue of fraud.  *See* Br. 42; *see also, e.g.*, JA11 (alleging that "potential customers were being intentionally redirected to Premier Agents"), JA17 (alleging "fraud and deceit"), JA22 (alleging that "Zillow's deception . . . influenced [FSBOs'] conduct").  But unlike REX, Picket Fence does not even argue that it could "state with particularity the circumstances constituting fraud."  *Compare* Br. 42–43, *with* Fed. R. Civ. P. 9(b).  *See also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (allegations of fraud in Lanham Act claim were subject to heightened 9(b) standard); *cf. Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996) (applying fraud statute of limitations to Lanham Act claim alleging inducement of consumers because "[s]uch claims can best be analogized to causes of action sounding in fraud" (quotation omitted)).

Finally, Picket Fence cites this Court's decision in *International Code Council Inc., v. UpCodes Inc.*, for the proposition that implied falsity may be "demonstrated through extrinsic evidence of consumer confusion or through evidence of the defendant's deliberate deception, which creates a rebuttable presumption of consumer confusion."  43 F.4th 46, 57 (2d Cir. 2022).  But this does not help Picket Fence, whose only

extrinsic evidence the district court found "vague and conclusory" (and unnecessary, given the logical flaws in its argument). JA55. Picket Fence cannot avail itself of the presumption; its allegations that Zillow's FSBO listings are misleading are irreparably deficient.

This Court may affirm the dismissal of the Lanham Act on this ground alone. Though it need not go any further, it can also affirm on either of two other bases: materiality and causation.

***Materiality.*** Even if Picket Fence could establish falsity, it must plead that Zillow "misrepresented an inherent quality or characteristic of the product." *Church & Dwight*, 843 F.3d at 70 (quoting *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014)). Because the definition of materiality is "somewhat unsettled," this Court in *Church & Dwight* assumed "an additional requirement that the deception be 'likely to influence [consumer] purchasing decisions.'" *Id.*

Although Picket Fence cites *Church & Dwight* in support of its conclusory materiality argument (Br. 40–41), the standard proposed there—that a falsity is material if a consumer is "likely to prefer the defendant's product" as a result—does not help it. 843 F.3d at 71. This standard *presupposes* falsity, and Zillow allowing FSBOs to list for free

55

is a true fact.  Zillow made "no guarantee" beyond the "preliminary step" of "advertising a property for sale."  JA56.

But even accepting for argument's sake that FSBO sellers listing on Zillow "were placed at risk of having to pay a commission to Premier Real Estate Agents," Picket Fence admits that "[i]t is always possible a real estate agent may contact a For-Sale-By-Owner"—even on its own site.  Br. 39–40.  Whether *International Code Council* permits evidence of materiality (Br. 41) changes nothing, as Picket Fence's baseline theory of materiality is based on flawed logic and points back at itself.

**Causation.**  Causation is a "separate essential element" from materiality (*see Church & Dwight*, 843 F.3d at 70), and Picket Fence cannot establish it, either.  It must plausibly plead that it was "injured as a result of the [alleged] misrepresentation."  *Merck Eprova AG*, 760 F.3d at 255.  But the amended complaint offers only the impermissibly conclusory allegation that its "downturn in income [w]as a direct result of Zillow's false advertising."  JA22.

As discussed above in the VCPA context (Part I.B.3), Picket Fence's argument that the business it lost must have gone to Zillow is based on the false assumption that the two are the only players in a zero-sum

game. *See* Br. 41. But this is not so (and is not alleged) on either a micro or a macro level. A FSBO seller is not required to choose between Picket Fence and Zillow. They can also list with both—because Zillow's listings are free, nothing "prevent[s] [FSBO sellers] from making a choice to use other services that charge" a "modest fee" as Picket Fence does (JA22, JA26)—or to not list online at all. And Picket Fence's declining revenues could be the result of any number of forces in the FSBO market: the relative appeal of its interface, other listing services, local buying and selling trends, broader trends in the housing market and the economy, and countless other factors. This is a logical flaw, not an evidentiary issue. *See* Br. 40–41.

The Court should affirm the district court's dismissal of the Lanham Act claim.

## CONCLUSION

Because Picket Fence's underlying theory of the case is fundamentally flawed, repleading the complaint yet again would have been futile. The district court properly exercised its discretion to dismiss with prejudice, and the judgment should be affirmed in full.

FEBRUARY 7, 2023                    Respectfully submitted,

                                   /s/ *Heather P. Lamberg*
                                   HEATHER P. LAMBERG
                                   LAUREN GAILEY
                                   WINSTON & STRAWN LLP
                                   1901 L Street, N.W.
                                   Washington, DC 20036
                                   (202) 282-5000
                                   hlamberg@winston.com

                                   *Attorneys for Defendant-
                                   Appellee Zillow, Inc.*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS,
AND TYPE-STYLE REQUIREMENTS**

I certify that:

1.      This document complies with the type-volume limit of Local Rule 32.1(a)(4)(A) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 11,639 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface: 14-point Century Schoolbook.

FEBRUARY 7, 2023

/s/ *Heather P. Lamberg*
Heather P. Lamberg

**CERTIFICATE OF SERVICE**

I certify that, on February 7, 2023, I caused this brief to be filed and served via this Court's CM/ECF system.

FEBRUARY 7, 2023

/s/ *Heather P. Lamberg*
Heather P. Lamberg