# 22-2066

---

## IN THE UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

---

Appealed from the

**United States District Court
for the
District of Vermont**
Docket No: 21-cv-12

---

## PICKET FENCE PREVIEW, INC.
**Appellant/Plaintiff**

## vs.

## ZILLOW, INC.,
**Appellee/Defendant**

---

# APPELLANT'S REPLY BRIEF

---

Thomas C. Nuovo, Esq.
Attorney for Plaintiff/Appellant
Bauer Gravel Farnham
40 Water Tower Circle, Suite 101
Colchester VT 05446

*Attorney for Picket Fence Preview, Inc.*

# TABLE  OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Zillow's Offer to Provide for Sale by Owner Advertisements Was
False and Deceptive in Violation of Both the Lanham Act and the
Vermont Consumer Protection Act. . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    Zillow Violated the Lanham Act by Failing to Offer a For Sale By
Owner Advertisement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.    The Vermont Consumer Protection Act Protects Competitors
from Both Unfair Methods of Competition and Unfair and
Deceptive Acts and Practices. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    The Use of the Words "Any Person" in the Vermont
Consumer Protection Act in 9 V.S.A. § 2465 Is Not
Limited to Consumers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.    Picket Fence Can Bring a Claim Where Zillow Has Engaged
in Unfair and Deceptive Acts and Practices That Hurt
Competition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    C.    Zillow's Actions of Offering a Deceptive "For Sale by Owner"
Advertisement Are Actionable by Picket Fence . . . . . . . . . . . 17

    D.    The Vermont Consumer Protection Act Protects Unfair
Methods of Competition, Which Protects Potential
Competitors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    E.    Providing Support for a Theory of Law Argued below by
Referencing Other Persuasive Jurisdictions Is Not
a Waived Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

i

IV.     Picket Fence Has Asserted Sufficient Facts in its Complaint to
        Support a Predatory Pricing Scheme . . . . . . . . . . . . . . . . . . . . . . . 24

V.      Zillow's Brief Contains Multiple Incorrect Statements Which
        Need to Be Addressed Separately. . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

**CASE LAW**

Allianz Ins. Co. v. Lerner, 416 F.3d 109 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . 23

Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104 (1986). . . . . . . . . . . . . 22

Fed. Trade Comm'n. v. Brown Shoe Co., 384 U.S. 316 (1966) . . . . . . . . . . 13,14

Fed. Trade Comm'n v. Gratz, 253 U.S. 421 (1920) . . . . . . . . . . . . . . . . . . . . . 13,14

Fed. Trade Comm'n v. Raladam Co., 316 U.S. 149 (1942) . . . . . . . . . . . . . . . 17,18

Franklin Cnty. Sheriff's Off. v. St. Albans City Police Dep't, 2012 VT 62  . . 21,22

Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242 (2010) . . . . . . . . . . . . . . 8

In Re Networks Corp. Sec. Litig., 539 F.3d 129 (2d Cir. 2008) . . . . . . . . . . . . . 23

Merck Eprova AG v. Brookstone Pharms., LLC, 920 F. Supp. 2d 404
(S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Payne v. U.S. Airways, Inc., 2009 VT 90 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232 (2d Cir. 2001)  . . . . . . . . 5

Selevan v. New York Thruway Auth., 584 F.3d 82 (2d Cir. 2009). . . . . . . . . . . . 2

State v. Int'l Collection Serv., Inc., 156 Vt. 540 (1991) . . . . . . . . . . . . . . . . . . . 24

Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144 (2d Cir. 2007) . . . . 5,6

## STATUTES, RULES AND OTHER AUTHORITIES

15 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Wheeler-Lea Act of Mar. 21, 1938, ch. 49, § 3, 52 Stat. 111 . . . . . . . . . . . . . . . 14

1 V.S.A. § 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9 V.S.A. § 2451 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,16

9 V.S.A. § 2453 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8

9 V.S.A. § 2453b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9 V.S.A. § 2454 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9 V.S.A. § 2457 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9 V.S.A. § 2458 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9 V.S.A. § 2460 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

9 V.S.A. § 2461 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,27

9 V.S.A. § 2461c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11,24,25

9 V.S.A. § 2464c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

9 V.S.A. § 2464e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

9 V.S.A. § 2465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8,11,15,27

21 V.S.A. § 601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

21 V.S.A. § 710 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

FTC Puts Hundreds of Businesses on Notice about Fake Reviews and
Other Misleading Endorsements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Marc Winerman, <u>The Origins of the FTC: Concentration, Cooperation, Control, and Competition</u>, 71 Antitrust L.J. 1, 19 (2003) . . . . . . . . . . . . . . . . 12,13

Unfair and Deceptive Acts and Practices, Seventh Edition (National Consumer Law Center), § 5.8.1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## ARGUMENT

**I.     Zillow's Offer to Provide for Sale by Owner Advertisements Was False and Deceptive in Violation of Both the Lanham Act and the Vermont Consumer Protection Act.**

Picket Fence's claims are very simple. Zillow engaged in unfair methods of competition by claiming to offer "For Sale By Owner" [FSBO] advertisements for free. This offer by Zillow was both literally and impliedly false, as it was not a FSBO advertisement. It was an unfair method of competition as it diverted potential For Sale By Owner advertisers from advertising on Picket Fence Preview. Though the Plaintiff has emphasized the injury to the public, it was the deceptive acts and practices to the public that also injured Picket Fence Preview by stealing potential customers with the lure of a free FSBO advertisement. Zillow's unfair and deceptive acts and practices caused injury to a competitor and as such are unfair methods of competition. Zillow did not offer a FSBO advertisement because it intentionally prevented potential buyers from contacting the sellers directly by intercepting the calls.

The entire purpose of an advertisement is to allow potential buyers to contact the seller about the product. If one advertises to sell a product, they expect the buyer to be able to contact them about buying. The facts in the complaint support both a claim under Vermont Consumer Protection Act as well as under the

Lanham Act.  Zillow's argument over the facts in the First Amended Complaint are nothing more than that: disputes over the facts.  Therefore its motion to dismiss should have been DENIED.

In conducting a review of a complaint the court assumes "all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief. [The Court] construe[s] plaintiffs' complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiffs' favor."  Selevan v. New York Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009).  Since Zillow is engaged in a factual dispute over what it offered the District Court should not have granted the motion to dismiss.

Zillow's offer was a violation of both the Vermont Consumer Protection Act and the Lanham Act because it was false.  Exhibit 3 attached to the First Amended Complaint shows that Zillow offered to "Post a For Sale by Owner Listing."  JA-36, Exhibit 3.  *See also* First Amended Complaint (FAC) at ¶ 54, JA-017.  Any finding or argument that Zillow did not make such a promise is false and cannot be considered on a motion to dismiss because it is a well pleaded fact supported by evidence on Zillow's webiste.  Zillow disputes what a "For Sale by Owner" advertisement means.  Zillow spends so much time disputing the facts in the FAC means there is no basis for granting a motion to dismiss.

Zillow claims that it did not claim For Sale by Owners who listed would not be contacted by real estate agents or buyers represented by real estate agents. However, Zillow's offer, as shown in Exhibit 3, says that those individuals who list will reach the "**largest audience of home shoppers** on the Web and **that home shoppers receive instant emails about new listings**." A seller would reasonably believe these potential buyers would be able to contact the seller directly. Isn't the purpose of an advertisement by a seller to connect with potential buyers? Nowhere does Zillow say it will intercept inquirers by potential buyers and divert all them to agents who pay Zillow for these connections. If Zillow had said it would divert all calls from potential shoppers to its Premier Agents, that would have been truthful. Shoppers are buyers. Zillow and real estate agents are not "shoppers." A reasonable person listing their property on Zillow would believe that a potential buyer would have the ability to call the seller directly. That was an unfair and deceptive act and an unfair method of competition.

Finally, Picket Fence was harmed because Zillow's unfair method of competition and unfair and deceptive practices diverted customers from the competition. These facts are detailed in the FAC. It is a fact that Zillow's actions hurt the competition by diverting potential customers from Picket Fence. FAC at ¶ 23, JA-011. It is a fact that if some customers had known how Zillow operated,

they would not have listed their property on Zillow.  FAC at ¶¶ 17, 18, 20, 22, 24.

JA at 010 - 011.  Therefore the Court must find injury to competition as a result of

Zillow's unlawful actions.

The question of whether Zillow's advertisements were deceptive is a

question of fact that must be decided by a jury.  How a reasonable For Sale By

Owner interpreted the offer by Zillow and what Zillow actually offered is a

question of fact for a jury.  Picket Fence has extensive experience working with

For Sale By Owners and knows what they expect.  Any attempts by Zillow to

argue a dispute over these facts means the Court must reverse the district court's

granting of the motion to dismiss.  Wherefore, Picket Fence requests this Court to

reverse the decision of the trial court granting Zillow's motion to dismiss.


## II.     Zillow Violated the Lanham Act by Failing to Offer a For Sale By Owner Advertisement.

Zillow violated the Lanham Act by claiming to offer a For Sale By Owner

listing to the general public.  Picket Fence pleaded that this offer was "[l]iterally or

impliedly false, because Zillow does not offer a For Sale By Owner

Advertisement, rather it provides an advertising space for its Premier Agents."  FA

at § 118, JA-28 and Picket Fence Brief at 3.  Picket Fence has offered the alternate

theory that the advertisement is impliedly false, but has never dropped its claim the advertisement by Zillow is literally false.

Zillow's offer for a FSBO advertisement was literally false because it did not offer a For Sale By Owner advertisement. This Court has held that "an advertisement can be literally false even though it does not explicitly make a false assertion, if the words or images, considered in context, necessarily and unambiguously imply a false message." Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 148 (2d Cir. 2007). "The Lanham Act expressly forbids false or misleading descriptions or representations of fact 'in commercial advertising or promotion' concerning the nature, characteristics, qualities, or geographic origin of ... goods, services, or commercial activities.' 15 U.S.C. § 1125(a)(1)(B)." Merck Eprova AG v. Brookstone Pharms., LLC, 920 F. Supp. 2d 404, 416 (S.D.N.Y. 2013).

"To establish a false advertising claim under Section 43(a), the plaintiff must demonstrate that the statement in the challenged advertisement is false. Falsity may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse customers." S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001) (quotations and citations omitted). Picket Fence's FAC

provides sufficient evidence for this Court to find Zillow's offer of a For Sale By Owner advertisement is literally false. It was not a FSBO advertisement, since Zillow intentionally diverted potential buyers from being able to reach the FSBO sellers directly. The entire purpose of an advertisement is for the buying public to be able to buy from the advertising seller directly.

This Court has held a statement can be literally false pursuant to the "false by necessary implication." In <u>Time Warner Cable, Inc. v. DIRECTV, Inc.</u>, 497 F.3d 144 (2d Cir. 2007) this Court adopted the "false by necessary implication" doctrine.

> Under this doctrine, a district court evaluating whether an advertisement is literally false "must analyze the message conveyed in full context," *Pennzoil Co.*, 987 F.2d at 946, i.e., it "must consider the advertisement in its entirety and not ... engage in disputatious dissection," *Avis Rent A Car*, 782 F.2d at 385 (internal quotation marks omitted). If the words or images, considered in context, necessarily imply a false message, the advertisement is literally false and no extrinsic evidence of consumer confusion is required.

<u>Id.</u> at 158. This doctrine is only applicable if the message is unambiguous. <u>Id.</u> In <u>Time Warner</u> this Court found that a statement in a commercial by William Shatner claiming that it would be "illogical" for a customer to use cable instead of Direct TV was literally false as both services provided the ability to obtain full HD TV quality.

Here Zillow is offering a For Sale By Owner advertisement on its website. In reviewing the full advertisement it states that in advertising on its website the seller will reach "the largest audience of shoppers on the Web" and that "home shoppers receive instant emails about new listings." Exhibit 3, JA-036. Its offer of a FSBO advertisement is unambiguous. However, as Picket Fence alleges in the FAC, Zillow intercepts and diverts the shoppers, so it is not really providing what a consumer would expect from a FSBO advertisement or what would be expected from its entire offer: Direct access to shoppers. Any further inquiry as to whether this is a violation of the Lanham Act on a motion to dismiss should end there. Therefore this Court should reverse the decision of the trial court granting Zillow's motion to dismiss.

III.    **The Vermont Consumer Protection Act Protects Competitors from Both Unfair Methods of Competition and Unfair and Deceptive Acts and Practices.**

The plain language of the Vermont Consumer Protection Act provides a cause of action for competitors like Picket Fence. The Vermont Consumer Protection Act provides an action for **any person** who has suffered damages for "any violation of State antitrust laws, including section 2453." 9 V.S.A. § 2465(a). Title 9 V.S.A. § 2453 makes "[u]nfair methods of competition in

commerce and unfair or deceptive acts or practices in commerce are hereby declared unlawful." 9 V.S.A. § 2453(a). If a business engages in unfair methods of competition or uses unfair or deceptive acts or practices in commerce to unfairly hurt competitors by diverting customers, **any person** may bring an action under action under the Vermont Consumer Protection Act if they have sustained damages.

A.    **The Use of the Words "Any Person" in the Vermont Consumer Protection Act in 9 V.S.A. § 2465 Is Not Limited to Consumers.**

The meaning of the 9 V.S.A. § 2465 is clear as it allows **any person** who has damages as a result of a business engaging in unlawful activity as defined by § 2453(a). In <u>Hardt v. Reliance Standard Life Ins. Co.</u>, 560 U.S. 242 (2010) the Supreme Court stated that when interpreting statutes it must "begin by analyzing the statutory language, assuming that the ordinary meaning of that language accurately expresses the legislative purpose. We must enforce plain and unambiguous statutory language according to its terms." <u>Id.</u> at 251. Zillow goes through a tortuous effort to have this Court believe the Vermont Legislature believed that "any person" would have the same meaning as "consumer" and thus gut the power of 9 V.S.A. § 2465. However, that would require an entire rewrite of the statute by the Court and be against the express language chosen by the Vermont Legislature. The Vermont Legislature knew its use of the words "any

person" would expand the scope of the statute and had previously used and defined "consumer" in the statute.

The Vermont Legislature knows what is doing when it uses the phrase "any person." A similar dispute arose in the use of "any person" in Vermont's Worker's Compensation Act. Vermont's Worker's Compensation Act defines "employer" at 21 V.S.A. § 601(3), but did not define person. However, in the unlawful discrimination statute the legislature chose to state that "no person" shall discriminate or retaliate against an employee who asserts a worker's compensation claim. 21 V.S.A. § 710(a)&(b). The Vermont Supreme Court stated the following:

> As we have already stated, the starting point for statutory interpretation is to give effect to legislative intent. We first look to the language of the statute and seek to construe it according to its plain and ordinary meaning. *State v. LeBlanc*, 171 Vt. 88, 91, 759 A.2d 991, 993 (2000). Where the language is clear and unambiguous, we enforce the statute according to its terms. *Id.* **As the term "person" is not defined in the WCA, we are obliged to interpret the term consistently with the rules set out in Title 1, chapter 3. 1 V.S.A. § 101. Chapter 3 defines "person" as including "any natural person." *Id.* § 128.** Accordingly, we find no ambiguity in the meaning of "person" in this statute, and we see no reason to second-guess what the Legislature meant by its use of the term. The statute allows an employee to be sued as an individual—which is consistent with the Legislature's approach to personal liability for violation of the VFEPA.

Payne v. U.S. Airways, Inc., 2009 VT 90, ¶ 24 (emphasis added). Thus this Court should affirm that the words "any person" means what it says as this is what is required by 1 V.S.A. § 101 which sets out the rules for statutory interpretation.

Zillow also ignores the numerous other places in the Vermont Consumer Protection Act where the Vermont Legislature specifically used person. For example, under Vermont's Predatory Pricing statute it specifically authorized "**a person** aggrieved by a violation .... [to] bring an action Superior Court for appropriate relief under subsection 2461(b) of this title." 9 V.S.A. § 2461c(e). The predatory pricing statute was clearly meant to allow competitors to bring an action, something Zillow does not dispute. However, it allowed a "person", not a consumer, to bring an action for relief provided in 9 V.S.A. § 2461(b).

Vermont Legislature used the word "person" throughout the VCPA as opposed to "seller" or "consumer" as it wanted parts of the VCPA to be applied against, or available to, anyone. *See* 9 V.S.A. § 2453b (Stating that "no person" shall retaliate against "any other person."); 9 V.S.A. § 2454(Allowing "the consumer or any other person obligated for any part of the purchase price" of a home solicitation sale to cancel."); 9 V.S.A. § 2457(Providing that "[n]o actual damages to any person need be alleged or proven to lie under this chapter."); 9 V.S.A. § 2458(Allowing Attorney General to bring an action against "any person"

to restrain prohibited acts.); 9 V.S.A. § 2460(Allowing Attorney General or State's Attorney to investigate "any person" who has violated § 2453.); 9 V.S.A. § 2461c(Allowing "a person aggrieved by a violation" of the predatory pricing act to seek appropriate relief.); 9 V.S.A. § 2464c(Providing a private cause of action to "any person" who receives a telephone call in violation of subsection 2464a(b).); and 9 V.S.A. § 2464e(Allowing "A person who receives a call in violation of this section to bring an action....").  Clearly the Vermont Legislature knew when and how to differentiate throughout the Consumer Protection Act between a "consumer" and "any person."  Therefore, this Court should hold that Picket Fence did not need to be a consumer to bring an action under 9 V.S.A. § 2465.

### B.  Picket Fence Can Bring a Claim Where Zillow Has Engaged in Unfair and Deceptive Acts and Practices That Hurt Competition.

Unfair and deceptive acts and practices [UDAP] can be an unfair method of competition.  Zillow would have this Court hold that UDAP violations cannot also be actionable as being anti-competitive or antitrust.  Unfair and deceptive acts practices are anti-competitive practices if those practices harm a competitor and are actionable under the Vermont Consumer Protection Act.

> In general, any unfair method of competition should be found to be an unfair trade practice.  Defendant may argue that the failure of the UDAP statute to prohibit "unfair methods of competition" evidences a legislative

intent to exempt antitrust violations form the state UDAP statute.  But a UDAP statute should apply to any unfair practice within the scope of that statute.  However, some courts have declined to apply their UDAP statutes to monopolistic conduct since a separate statutory scheme address that area and antitrust violations may not fit within the UDAP statute's framework.

Unfair and Deceptive Acts and Practices, Seventh Edition (National Consumer Law Center), § 5.8.1.3 Does the UDAP Statute Prohibit Anti-Competitive Conduct?  The concepts of anti-competitive or antitrust violations overlap between unfair methods of competition and UDAP.  A UDAP practice is an unfair method of competition if it affects competition.  Zillow's deceptive acts and practices affected consumer choice and unlawfully harmed the competition, specifically Picket Fence.  Consumers given a choice of a free FSBO advertisement on a national platform, or a paid one on a local platform, were inclined to choose the free one to the disadvantage of Picket Fence, a competitor of Zillow.  Since Zillow's advertisement was deceptive, it is an antitrust or anti-competitive action and thus Picket Fence has a claim against Zillow.

The distinction between antitrust and anti-competitive practices was first acknowledged in a 1904 report by the Bureau of Commissions.  Page 19.  "The former futilely sought to maintain 'a condition of competition'; the latter accepted that combination was inevitable and regulated 'methods of competition' so that process would 'be attended by as little injustice as may be.'"  Marc Winerman,

The Origins of the FTC: Concentration, Cooperation, Control, and Competition, 71 Antitrust L.J. 1, 19 (2003)(citing Report of the Commissioner of Corporations 40-41 (1904)). When the Federal Trade Commission Act of 1914 was originally passed it only authorized the FTC to bring actions for unfair methods of competition. Section 5 of the 1914 Act provided "that unfair methods of competition in commerce are hereby declared unlawful." *See* Chap. 311 - An Act To create a Federal Trade Commission, and duties and other powers. H.R. 15613 (September 26, 1914).

The language "unfair **methods** of competition" was chosen instead of "unfair competition" as it was more expansive and did not require direct proof of harm to competition that would be required for "unfair competition." The limits of the Federal Trade Commissions power under its authority to limit unfair methods of competition came to a head before the United States Supreme Court in Fed. Trade Comm'n v. Gratz, 253 U.S. 421 (1920), *overruled by* Fed. Trade Comm'n. v. Brown Shoe Co., 384 U.S. 316 (1966). This decision is relevant here as it defines what is meant by "unfair methods of competition" as including actions that are "opposed to good morals because characterized by deception, bad faith, fraud, or oppression, or as against public policy because of their dangerous tendency unduly to hinder competition or create monopoly." Id. at 427. This was the

definition the Supreme Court gave to "unfair methods of competition" as of 1920, prior to the 1938 amendment to the FTC Act which added "unfair and deceptive acts and practices" as being unlawful. *See* Wheeler-Lea Act of Mar. 21, 1938, ch. 49, § 3, 52 Stat. 111. The actions of Zillow meet this definition as it offered a false FSBO advertisement that was deceptive, done in bad faith and had the capacity to hinder competition.

The decent in <u>Gratz</u>, which was written by Justice Brandeis, is more important and more expansive. "Later cases of this Court, however, have rejected the <u>Gratz</u> view and it is now recognized in line with the dissent of Mr. Justice Brandeis in *Gratz* that the Commission has broad powers to declare trade practices unfair." <u>Fed. Trade Comm'n. v. Brown Shoe Co.</u>, 384 U.S. 316, 320–21 (1966). Piror to becoming a Justice, Justice Brandeis was a key advocate and active participant in the drafting of the 1914 Federal Trade Commission Act. The purpose of the FTC Act was to allow intervention where the FTC "discovered that any business concern had used any practice which would be likely to result in public injury - because in its nature it would tend to aid or develop into a restraint of trade" before it became an antitrust action. <u>Gratz</u> at 435. Justice Brandeis acknowledged that Congress chose not define unfair acts as any such list would soon be deemed incomplete or not applicable to all industries. <u>Id.</u> at 436-37.

This is in line with Vermont's Consumer Protection Act which allows a business competitor a cause of action for unfair methods of competition or unfair deceptive acts and practices where it has harmed competition. Title 9 V.S.A. § 2465 meets this requirement by requiring any person who brings an action to show they suffered damages. Zillow's actions harm the public and have caused damages to Picket Fence and thus it is entitled to bring an action under § 2465.

Zillow's Brief attempts to split hairs by trying to claim that deceptive acts and practices are not methods of unfair competition. "The purpose of [the Vermont Consumer Protect Act] is to complement the enforcement of federal statutes and decisions governing unfair methods of competition, unfair or deceptive acts or practices, and anti-competitive practices in order to protect the public and to encourage fair and honest competition." 9 V.S.A. § 2451. Section 2451 was amended in 2011 to include the phrase "anti-competitive practices", which reflects an ongoing desire by the Vermont Legislature to protect customers by promoting fair and honest competition by protecting competition. The choice of the word "honest competition" also shows the Vermont Legislature is looking to curb actions where a party like Zillow is dishonest claiming to offer a For Sale By Owner advertisement where potential buyers are intentionally diverted by Zillow away from the seller.

The VCPA allows for consumers to sue for unfair or deceptive acts and practices, but it also allows competitors to sue for unfair methods of competition as well as unfair or deceptive acts or practices which harm competition. The entire purpose of the act is to "encourage fair and honest competition" and allowing a competitor to engage in unfair or deceptive acts and practices is not encouraging "fair and honest competition." 9 V.S.A. § 2451. There is no separating the two issues as Zillow is requesting this Court to do. Allowing a competitor to deceive the public is not encouraging fair and honest competition.

An October 2021 press release by the Federal Trade Commission entitled "FTC Puts Hundreds of Businesses on Notice about Fake Reviews and Other Misleading Endorsements" shows how the FTC views falsity and competition. ~~Copy reproduced at A-002~~. The FTC put on notice parties who endorse fake reviews or other misleading endorsements supports Picket Fence's position. The FTC went after business because it deemed the practice of providing fake reviews, endorsements, etc. to be deceptive practices. "'Fake reviews and other forms of deceptive endorsements cheat consumers and undercut honest businesses,' said Samuel Levine, Director of the FTC's Bureau of Consumer Protection. 'Advertisers will pay a price if they engage in these deceptive practices." This

confirms that the FTC believes that deceptive practices, such as offering a deceptive offer of a FSBO advertisement, can be brought to defend competitors.

**C.  Zillow's Actions of Offering a Deceptive "For Sale by Owner" Advertisement Are Actionable by Picket Fence.**

Zillow's unfair method of competition and unfair and deceptive acts and practices are actionable. What Zillow offered the public was the best platform to place your For Sale By Owner advertisement and we will give it to you for free. Why pay for an inferior service, when you can have the best service for free?  That offer diverts customers from competitors such as Picket Fence Preview, since Zillow is claiming to offer the best platform for free.  Once a For Sale By Owner advertises on Zillow, they are stuck as the possibility of selling its property for the asking price diminishes the longer the property is listed.

This is similar to the actions the United State Supreme Court found to be a violation of the FTC Act in <u>Fed. Trade Comm'n v. Raladam Co.</u>, 316 U.S. 149 (1942).  In <u>Raladam</u> the Court found a violation where Raladam falsely advertised its product would reduce weight.  The Court held that "when the Commission finds as it did here that misleading and deceptive statements were made with reference to the quality of merchandise in active competition with other merchandise **it is also authorized to infer** that trade will be diverted from

competitors who do not engage in such 'unfair methods.'" Id. at 152.  Similarly, Picket Fence is entitled to seek compensation for Zillow's misleading and deceptive statements under the Vermont Consumer Protection Act because it can be inferred that trade is diverted from competitors like Picket Fence.  Picket Fence's FAC lays out more than an inference that Zillow's "unfair methods" caused it injury, it relates a specific comment by a customer who indicated that if they had known how Zillow diverted the advertisements they would have used Picket Fence instead.

"Picket Fence, which has been involved in marketing properties for For-Sale-By-Owners for 28+ years, knows that the longer a property is for sale the more it becomes perceived as being less valuable by potential buyers."  FAC at ¶ 34, JA-013 and ¶ 35, JA-014.  Zillow's own website confirms that the longer one has their property listed, the lower ones odds are for selling it at list price.  The table below published on Zillow's website shows that a property listed for more than 12 weeks only has a 9% chance of selling at or above list price.[1]  So time is a critical factor and posting an advertisement in another publication is not an option.  In a span of 12 weeks a home owner goes from a 57% chance of selling their home for their asking price to 9%.  A delay of three weeks, reduces the chance by almost

---

[1]    https://www.zillow.com/sellers-guide/how-to-sell-your-house-for-sale-by-owner/?t=selle rlandingpage_v6-21_learnmore

20%.  Thus every diverted potential buyer that causes a delay in the sale has a direct impact on the customer.  Changing to a different advertising platform will cause even more delays and lower even more the chance of selling the home for the listed price.



No one would list a product for sale if they knew all the potential buyers were being diverted and that their listings were just being used to support Zillow's paying real estate agents for potential contacts.  The commodity for Zillow is the buyers, as they generate the revenue for its Premier Agents who pay for leads and

pay to advertise. Zillow never told the For Sale By Owner Advertisers they were diverting calls from potential buyers. Zillow's deception diverted potential buyers from legitimate advertising companies who focused on providing advertisements For Sale By Owners.

Zillow does not get to define the term "For Sale By Owner" as it is a term of art and has a recognized meaning among the public. If there is a factual dispute over the definition of what a For Sale By Owner advertisement is, a court cannot grant a motion to dismiss. That is a question for the jury.

The definition of For Sale By Owner advertisement provided by Zillow is false. It is not an advertisement if no one can contact the seller directly and all calls have to go through Zillow's call center. For each call that is diverted the Seller loses precious time and money. The point of an advertisement is to allow individual buyers to contact seller directly, not to have potential contacts for the advertisement diverted by Zillow. Imagine if one advertised a product for sale in the local newspaper and the newspaper diverted all contacts on the advertisement to it and redirected buyers to a different product. Zillow makes a conscious decision to interject itself in the process, and diverts the inquiries, without disclosure of this process to the For Sale By Owner. That is not only false, but it is also an unfair method of competition and an unfair and deceptive act or practice

in commerce.  The suggestion that Zillow offered a For Sale by Owner advertisement is false.

**D.    The Vermont Consumer Protection Act Protects Unfair Methods of Competition, Which Protects Potential Competitors.**

Zillow is misreading the purpose of the VCPA by promoting the idea that it protects competition as opposed to competitors.  The quote it cites relating to the VCPA as "protecting competition, rather than the protection of competitors" is quoted out of context.  Appellee's BR at 28.  This quote relates to allowing mergers even though it may hurt competition.  This quote was incorrectly used in Franklin Cnty. Sheriff's Off. v. St. Albans City Police Dep't, 2012 VT 62, ¶ 20. The Franklin Cnty. Sheriff's case had to do with a dispute between the Franklin County Sheriff's office and the St. Albans City Police Department bidding on the same contract.  The dispute was over the fairness of the Police Department's bid. This case turned on the fact that there cannot be competition between police services as it is defined under the Consumer Protection Act.  "In the context of this case, there is simply no 'unrestrained interaction of competitive forces' in the Vermont law enforcement market that would require regulation by the predatory pricing statute."  Id. at ¶ 20.  "[T]he statutory scheme relating to law enforcement

embraces no element of competition in an open marketplace" as the universe of who can supply these services is limited to "state actors."  Id.

The issue here is not the restriction of competition, it is the use of both "unfair methods of competition and unfair and deceptive acts in commerce" that are unlawful to divert customers from competition that is illegal.  The quote relied upon by Zillow comes from Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 109–10 (1986), where the United State's Supreme Court was discussing the effect of a merger on competitors.  The discussion was about the fact that a merger allowed for continued competition, as without the merger the merged businesses would have failed.  The Supreme Court recognized that in the context of a merger there "was not an antitrust injury, since it is inimical to the antitrust laws to award damages for losses stemming from continued competition.   This reasoning in *Brunswick* was consistent with the principle that the antitrust laws ... were enacted for 'the protection of competition, not competitors.' *Ibid.*, quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962) (emphasis in original)."  Cargill at 109–10(edited by removing quotations). Picket Fence is seeking to protect competition by stopping Zillow from engaging in unfair methods of competition and unfair and deceptive acts and practices, not from preventing a merger.

### E. Providing Support for a Theory of Law Argued below by Referencing Other Persuasive Jurisdictions Is Not a Waived Argument.

In its principal brief Picket fence has pointed out how other states have interpreted their consumer protection laws to allow claims by competitors. The use of supplemental support for a legal position raised below is not the same as waiving an argument. Zillow claims that looking to the case law from other jurisdictions was waived because Picket Fence did not mention these cases below. Citing Allianz Ins. Co. v. Lerner, 416 F.3d 109 (2d Cir. 2005) and In re Nortel Networks Corp. Sec. Litig., 539 F.3d 129, 132 (2d Cir. 2008). Those cases stand for the proposition that a party may not ask the Court to consider other basis for its claims not raised below. For example, in Allianz the defendants wanted to argue two new ambiguities in the contract on appeal for the first time. The Court denied that request, because it had not been raised below. Similarly in In re Nortel Networks plaintiff argued an entirely new theory of law it did not argue below, and this Court declined to consider that argument. All Picket Fence has done here is find additional legal support for arguments previously raised and thus the waiver provision does not apply.

Picket Fence argued below that Vermont's Consumer Protection Act was not limited to actions brought by consumers. Below Picket Fence relied mostly on

Vermont law to support its position.  Specifically it relied upon <u>State v. Int'l</u>

<u>Collection Serv., Inc</u>., 156 Vt. 540 (1991) to support its position the VCPA

allowed for actions to protect business victims who were not consumers.  On

appeal, Picket Fence found other jurisdictions which had made similar rulings and

thus supplemented this research to support the position it took below.  The factual

and legal argument has not changed as all Picket Fence has done is provide

additional persuasive support for its position.


**IV.    Picket Fence Has Asserted Sufficient Facts in its Complaint to Support
        a Predatory Pricing Scheme.**

Picket Fence's First Amended Complaint sets out sufficient facts to support

a predatory pricing scheme.  Vermont's predatory pricing scheme is more

expansive than of the Sherman Anti-Trust Act.  Vermont predatory pricing scheme

provides that "no person, with intent to harm competition, shall price goods or

services in a manner that tends to create or maintain a monopoly **or otherwise**

**harms competition."**  9 V.S.A. 2461c(a).  Similar to other provisions in the

VCPA it directs the courts to "be guided by similar terms contained in federal anti-

trust law as construed by the United States and as amended by Congress."  §

2461c(b). The Sherman Anti-Trust Act is more limited as it only makes it unlawful

for anyone "who shall monopolize, or attempt to monopolize, or combine or

conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations ....” 15 U.S.C. § 2. Vermont allows actions for any pricing of goods or services that “otherwise harms competition” which is more expansive than the requirements of the Sherman Anti-Trust Act. 9 V.S.A. § 2461c(a).

**V.     Zillow's Brief Contains Multiple Incorrect Statements Which Need to Be Addressed Separately.**

Picket Fence needs to address multiple incorrect statements in Zillow's Brief.  Picket Fence does not believe it is necessary to address all the incorrect statements here, as many are addressed in the body of the Reply Brief.

In its Brief Zillow states that it “makes ‘no guarantee’ about subsequent steps in the transaction, such as whether a buyer will have an agent and who will pay that agent's commission.”  Zillow Brief at 2.  This is incorrect.  It promised a For Sale By Owner Listing and that this listing would be available to shoppers on the largest network.  However, those shoppers were not available to those who listed the ads as they were purposefully diverted by Zillow.  The fact that a buyer already had an agent, or later retains an agent, is irrelevant.

Picket Fence does not clam that “the risk that an agent will be involved vitiates Zillow's ability to call its listing ‘FSBO.”  Id.  What Zillow did was

intentionally divert potential buyers to agents instead of the For Sale By Owner.

Shoppers, or home buyers, were not able to contact the seller directly, and the

intentional diversion by Zillow of these buyers made the offer of a FSBO

advertisement false.

Zillow claims a that "if the seller does not wish to pay [an] agent's

commission, the parties remain free to either work that out amount themselves or

walk away." Zillow Brief at 3. That is not a fair choice. As noted at on page 19

of this Brief, the longer a home remains on the market, the less likely it will sell at

the listed price. So the interception of the buyer delays potential sales and costs

the seller money. Allowing a potential buyer to walk away costs money creating a

Hobson's choice for the seller.

Zillow claims that "Picket Fence made no meaningful effort to defend its

predatory pricing claim." Id. Picket Fences sufficiently pleaded this claim in the

FAC. See FAC at ¶¶ 51 - 53, 66, and 94. It also addressed this issue below and in

its Brief at pages 32 - 33. The claim for Predatory pricing is pretty straightforward

and the length of its argument does not mean it was abandoned. Zillow's goal,

which it is achieving, is to be reach the "largest audience of home shoppers" is

illegal where it does this by harming competitors. Exhibit 3, JA-036.

Picket Fence never claimed it was suing under 9 V.S.A. § 2461(b). Zillow Brief at 7 - 8. As noted above Picket Fence is suing for unfair methods of competition and unfair and deceptive acts and practices which affect competition pursuant to 9 V.S.A. § 2465.

Zillow claims that Picket Fence does not allege injury to competitors, rather it only makes a claim for injury to itself. Zillow Brief at 47. In the FAC Picket Fence alleges that Zillow's predatory pricing scheme created "an unfair playing field for legitimate For Sale By Owner publications." FAC at ¶ 58-59, JA-018. *See also* FAC ¶ 67, JA-020("Zillow destroyed the competitive market for For-Sale-By-Owner sellers' paid advertising by stealing For Sale By Owner advertisements and taking them away from Picket Fence Preview."); and ¶¶ 48, 50, 52 and 73, JA at 016, 017 and 021.

## CONCLUSION

Wherefore the Plaintiff as this Court to reverse the District Court's dismissal of the Picket Fence's First Amended Complaint and remand this matter back to the District Court.

"Federal Courts do not create new state law causes of action." Zillow Brief at 34. This is why the Court should GRANT certification of the question to the Vermont Supreme Court to allow it to determine the scope of 9 V.S.A. § 2465.

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Local Rule 32.1(a)(4)(A) because it contains 6,189 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, Times New Roman 14-point font.

Dated at Colchester Vermont this 21st day of February, 2023.

Bauer Gravel Farnham, LLP.
Attorneys for Appellan/Plaintiff


By: _____/s/ Thomas C. Nuovo_____
Thomas C. Nuovo, Esq.
401 Water Tower Circle, Suite 101
Colchester VT 05408
(802) 863-5538
Tnuovo@aol.com